PROUTY *v.* EDGAR.

Where a party, at the time of making a deed of real estate, represents himself to be of full age, and the grantee, relying upon such representations, receives the same, the grantor cannot disaffirm the contract on the ground of infancy.

Where a party holds the legal title to real estate, in trust for another, who has executed a bond for the conveyance of the same, and received the purchase money, and where the trustee conveys the land in accordance with the requirements of the bond, he cannot set aside the deed, on the ground that he was a minor when the deed was executed; nor for the reason that the bond was obtained from the party holding the beneficial interest in the land by fraud and duress.

In equity, an infant who holds the legal title to land, as trustee, may be compelled to convey the same.

*Appeal from the Mahaska District Court.*

TUESDAY, JUNE 22.

Bill in chancery to set aside a conveyance of real estate, on the ground that it was obtained by fraud and duress. The petition alleges, that in the year 1850, the complainant purchased with his own money, and for his own use and benefit, the said real estate, describing it; that he received a certificate of location, which he has since lost; that about the time he entered said land, there was a great excitement in the neighborhood in relation to entering lands upon which persons had claims; that the respondent took advantage of said excitement, and asserted that he had a claim on said land, according to the claim laws, at the time the same was entered; that in fact, respondent had no such claim; that the respondent, by misrepresenting the facts, induced a large number of men to assemble together, who went to the complainant for the purpose of compelling him to convey the said land to the said respondent; that the said persons, being informed that the complainant was a minor, then went to A. T. Prouty, the father of complainant, and by force and arms, threats and menaces, and duress, compelled the said A. T. Prouty, to

give to said respondent a bond for a deed for the said land, and to convey the said land to the said respondent, or to have the same conveyed, by the time complainant should become of age, to which bond was affixed a penalty of two hundred dollars; that in the spring of 1851, the complainant was preparing to go to California; that in consequence of the importunities and threats of said respondent, and other persons in his behalf, and the fear occasioned thereby, together with the fact that his father was so bound as aforesaid, the complainant against his own will and inclination, was forced to execute to said respondent, a deed for said land, which deed was acknowledged before the clerk of the board of commissioners of Jasper county; that he never received any consideration whatever for the said land; that said respondent never paid sixty dollars, nor any other sum for the said land; that at the time said deed was made, said complainant was a minor, and did not arrive at majority until February, 1852; that said deed was not acknowledged before any officer authorized to take the acknowledgment of deeds; and that the said land is rightfully the property of the complainant. The prayer of the bill is, that the said deed may be set aside and cancelled, and for general relief. A copy of the deed, which bares date April 26, 1851, is attached to the petition.

The answer of the respondent, admits the entry of the land, and the execution of the bond and deed as alleged, and denies the allegations of fraud and duress, and all the other material allegations of the bill. The answer then alleges, that at the time said land was entered, the respondent had a possessory right thereto, usually known as a "settler's claim," upon which he had valuable improvements; that he had for a number of years been in possession of the same; that he had his claim marked out and established, according to the rules and regulations of the neighborhood in which the same is located; that having such claim and settler's right, the father of said complainant procured said complainant to enter said land, and furnished him fifty dollars to make said entry; that soon

after said entry, respondent learned thereof; that the father of complainant was waited upon, in a friendly manner, and informed of the rights of respondent in and to said premises ; that an amicable and friendly arrangement was made, by which respondent gave to the said A. T. Prouty, his note for sixty dollars, payable a short time thereafter, which was agreed upon as the consideration for said land, and in consideration thereof, the said father of complainant, voluntarily gave this respondent his bond, obligating himself to convey to respondent said land, upon the payment of the said sum of sixty dollars, or when the said complainant, whom the father represented to be under age, should arrive at his majority ; that afterwards said note for sixty dollars was promptly paid by the respondent —and the father, still representing the son to be under age, made another bond, by which the full payment of the consideration money for said land, was acknowledged, and he therein agreed to have the said land conveyed, whenever his son should attain his majority ; that in April, 1851, the complainant voluntarily came into the town of Newton, and there, freely and voluntarily, and without any fraud or compulsion, made and acknowledged a deed to respondent for said land ; that at the time of making said deed, no persons were present except the officers, the witnesses, and the parties thereto ; that at the time complainant entered said land, and before, he represented that he was of age; that from such representations, respondent had good reason to believe he was of age ; and for some time before said deed was made, complainant engaged in business as an adult, and was so engaged at the time of making said deed; that said complainant never, in any way disaffirmed his said deed; that the land was entered by the son with the father's money, and for his benefit; and that complainant has repeatedly so stated.

The complainant replied, denying the new matter alleged in the answer.

The witnessses on the part of complainant, testified substantially as follows :

*Thomas Rees*—I am acquainted with a quarter of land known as "the black quarter." It was deeded by Anson T. Prouty to Joseph Prouty and Asher T. Prouty. One hundred acres off of the north side of the quarter was deeded to Joseph. Anson T. Prouty was the father of Joseph. The land was deeded under the following circumstances: Some time in the month of May or June, 1849, Anson T. Prouty was doing a job of breaking for me. I spoke to him about deeding this land, or a part of it, to Joseph. I told him that Joseph was a good boy, and he ought to do something for him, as he was his main dependence; and that it would be nothing more than right for him to deed Joseph a part of this land. After talking upon the subject for sometime, he concluded he would divide it between Joseph and Asher, and give each of them forty acres of timber besides. The land was not purchased by Joseph, but was a mere gift from the old man. The forty acres of land in controversy in this suit, had nothing to do with the deeding of the land in the "black quarter." The land in the "black quarter" was not given in lieu of the purchase money for the forty acres in controversy in this suit. I am son-in-law of Anson T. Prouty.

*Jesse Rickman*—Anson T. Prouty gave to the respondent a bond for the land in litigation. It was signed by A. T. Prouty, Evan Adamson, and Joseph Prouty. The father signed Joseph's name to the bond. The bond required the deed to be made in February, 1851, or 1852, I think. I am not positive about the time. The deed to the land was made either the last of April, or the first of May, previous to the time fixed in the bond. My impression is that the bond was given in the summer or fall of 1850, and the condition was that Joseph Prouty should make a deed to James Edgar, at the expiration of the time fixed in the bond.

*Elizabeth Prouty*—My age is sixty years. I am the mother of Joseph Prouty. Joseph was born on the 9th day of February, 1831.

*Asher T. Prouty*—I am a brother to the complainant.

His age is twenty-four years. He was born February 8th, 1831. I mean that he is twenty-four next February. Myself and brother, most of the time, have lived at home. Joseph Prouty is now in California. He left for California, April 26, 1851. At that time he was a single man. My father, Anson T. Prouty, is not now living. While my brother was living at home, and before he went to California, he did not do business for himself, as a general thing. We kept a family record in the family Bible. It is now in California—was taken there in 1852. I heard Joseph say he did not intend to make a deed when he came of age.

*Henry Rodgers*—I had a conversation with the respondent, the day the deed was made to him for the land, by Joseph Prouty. Edgar came to me, and appeared very much agitated. He remarked that Joseph Prouty was coming across the prairie, and was on his way to California; that he could not go until he had made a deed for the land. I remarked something to him in regard to the deed being of no value, unless the complainant was of age. Edgar swore that he believed they had been fooling him, for he believed that Joseph had been of age for a year past, and that he would have the deed; that he was satisfied that Prouty was old enough to make a good deed, and he would have it, let the consequences be what they may; that he would risk its being a good deed; and that Prouty could not leave this town without making the deed. He appeared to be very angry. He further said that Prouty, the damned old scoundrel, had furnished the money to enter the land with, and was afraid to enter it in his own name. A short time after this, on the same day, I had a conversation with the complainant. The conversation took place in the spring of 1852, and I understood, Prouty was then on his way to California. The land in controversy, in the spring of 1851, was worth five dollars per acre. In the conversation I had with the complainant, above referred to, he told me, that if Edgar crowded on for the deed, he would make it, for he did not care a damn for it. He

afterwards told me that he had made the deed, and the matter was settled. In the conversation I had with Edgar about making the deed, no threats were made against Prouty—more than that he should make the deed before he left.

The testimony on the part of the respondent was substantially as follows:

*James Pearson*—I am acquainted with the land in controversy. It is a forty acre tract adjoining the town of Newton, on the west side. Edgar had a claim upon it. It was made about nine years ago. I marked it out for his wife, before she was married—it was marked and staked out according to our rules. After she was married, it was re-marked for Edgar. The wife had work done on it first, for I helped build the fence on it, and after they were married, he had work done on it. He had the claim kept up, and it was never forfeited. A. T. Prouty, the complainant's father, told me that he had made a bond to Edgar for the conveyance to him of the land; that his son had made a deed for the land, and Edgar had paid him (the father), for the land, with interest, which he never expected to get; and that he had given the complainant other land in place of that in controversy. The complainant also told me, that he had got other land in lieu of that in dispute. A. T. Prouty is dead. When the complainant came to the county, he said he was eighteen years of age. That was eight years ago this fall. When he entered the land, his mother said he was in his twentieth year. I have heard his father say the same thing. I have heard the complainant say that Edgar had paid his father for the land, and he had got land in lieu of it. He also said he would not have entered the land, only to *devil* Edgar—he intended to make him enter it, or put him to some trouble.

*Jesse Rickman*—I know the land in controversy. It adjoins the town of Newton. In the spring of 1850, I think, old man Prouty gave a bond for a deed to the re-

spondent at which time Edgar paid Prouty a balance that was due on a note. My understanding was that the note was given for the land. The old man Prouty, Evan Adamson, and Edgar came to me, and asked me to write a bond for a deed, to be made by Joseph Prouty when he should become of age. The time was stated in the bond, but I forget when it was. The old man signed his own name and Joseph's, and Adamson signed it as security. In April or May, 1851, I saw a paper handed to Joseph Prouty, when on his way to California, by the respondent. It was at the time Joseph Prouty executed the deed. It was said to be the bond for the deed. I wrote the deed, and it was acknowledged before me. A. T. Prouty, Edgar and Evan Adamson were present when the bond was executed, and Edgar, T. J. Adamson, and Henry Rodgers, when the deed was made. The note called for $60, and was paid off at the time the second bond was made. I made a calculation of the interest on the note, at the time it was paid off. When I wrote the deed, Edgar and Thos. Adamson came in together, and I think Edgar requested me to write the deed. The complainant came in about the time it was filled up.

*Evan Adamson*—A. T. Prouty, the father of complainant, and myself, executed a bond to the respondent for the conveyance of the land in dispute. I do not recollect the exact time—it must have been about four years ago. I was asked by Prouty to go security on the bond, and did it. At the time the bond was executed, Edgar paid $56 to A. T. Prouty for the land. Joseph Prouty made a deed for the land—it was made three or four years ago last spring. On the day the deed was made, I met Joseph Prouty on the street. He stated that he was on his way to California, and asked me if I knew where James Edgar was. I told him I did not—I supposed he was in town somewhere. He said, perhaps it would save trouble to have the deed made to Edgar, before he went to California. He told me to see Edgar and bring the bond, and he was willing to make the deed. I saw Edgar—he

brought the bond, and the deed was made. Joseph Prouty handed me the bond, and told me to give it to his father. I took my name off, right where the deed was made, and Mrs. Prouty, the mother, called at my house and got the bond. At the time the deed was made, Joseph Prouty told me that he was of age, and could make as good a deed as he ever could. With regard to the bond made by A. T. Prouty, on which I went security, he told me that he had to give bond with security, or do worse. That bond was made at the court-house. A good many persons were present when it was made. The gathering at the court house, was in consequence of Prouty having entered the claim of Edgar. It was my understanding that the claim-club of the neighborhood, compelled A. T. Prouty to give that bond.

*George Duly*—I know the land in dispute in this suit. It was entered by myself, in the spring of 1849, if my memory serves me. Anson T. Prouty furnished me the money to enter it, and told me to enter it in the name of his son Joseph. He gave me the numbers. After I came back from the land office, I learned that it was a part of the respondent's claim. I heard both the complainant and his mother say, before he went to California, that he was of age.

*Thomas J. Adamson*—I know that the complainant executed a deed to the respondent, for the land in controversy. He made it on the day he passed through Newton, on his way to California. I heard him say that he had made it. On that day, he told me he was of age, and that he wanted to make the deed, so as not to get his securities into any trouble. The practice of the claim-club, where claims had been wrongfully entered, was to meet and make propositions—to get them back peaceably, if possible, but to get them back. After the bond and security was given, the excitement about the Edgar claim died away, and good feeling existed between the parties. I have reference to the bond given by A. T. Prouty and Evan Adamson, that James Prouty would make a deed to

Edgar for the land, when he became of age. The claim was made eight years ago, I think. My father made the claim, and gave it to my sister, and when Edgar and her were married, he marked the claim out again. I helped him to do it.

The district court dismissed the bill, at the cost of the complainant, from which decree he appeals.

*Hall, Harrington & Hall,* and *Loughridge & Cassidy,* for the appellant.

Anson Prouty, the father of complainant, caused the land in controversy, to be entered in the name of complainant. It was an advancement by the father to the son. The defendant claims no equities against the father, unless upon the bond. This cannot offset the rights of the son. If the advancement was made in good faith—and defendant cannot say that it was not—the bond having been given subsequent to the advancement—then the merits of this cause depend upon the equitable relations existing between Joseph Prouty and the defendant.

We think the evidence discloses sufficient fraud and duress, to justify a court of equity in cancelling the deed, but our argument proposes to be cumulative to the evidence, and upon the assumption that fraud and duress are not shown.

Joseph Prouty, at the time he executed the deed in question, was, in legal vernacular, *an infant;* immediately upon the execution of the deed, he goes to a foreign state; and, in about eighteen months after he becomes of age, sends his power of attorney, authorizing the institution of this cause. What is the force of that contract between the two parties? We think it void. Before we proceed farther, it may be well to direct your attention to a distinction, which we think has been drawn by the authorities, between cases in law and equity, where the same questions have arisen, as in this. In an action of ejectment, or for trespass, an individual cannot avoid a deed executed during

his infancy, unless he has, by some "notorious" act, invalidated the deed since he became of age.    In such cases, the question of title is involved, and neither party, by his pleadings, notifies the other of the grounds upon which they claim; and to avoid a conveyance, which may have been acquiesced in for years, would be a surprise, and work extreme hardships.    Even in these cases, doubts rest upon the authorities, whether infancy may not be shown to avoid the deed.    But this cause is not to recover land, but to avoid that which is voidable.    It is an application to a court of equity, in order to create the "notorious avoidance," which will invalidate the deed in controversy, should we bring an act of ejectment hereafter against defendant.

An infant's contract, except for necessaries, is neither void nor valid—but voidable.    It is as distant from being "valid" as from being "void," and requires as defined, clear and distinct a ratification, to make it valid, as it does avoidance, to make it void.    The act, whether to ratify or invalidate, must be an act, not a mere omission.    It is said the act of avoidance must be as notorious as the contract sought to be avoided; a mere admission or acknowledgement of the contract, is not sufficient.    Comyn on Cont., 794; 1 Parsons on Cont., 269.    So must the ratification be equally notorious.    The mere fact that an infant does not, after he becomes of age, disaffirm a contract, is not of itself a confirmation.    2 Parsons on Cont., 271.    It requires other circumstances in addition; in other words, the mere omission or acquiescence is not a ratification.

In *Jackson* v. *Carpenter*, 2 Johns., 539, the same questions, as to the force of a deed, were involved as here, and are clearly and distinctly adjudicated.  A mere acquiescence of a person in a deed, for ten years after he becomes of age, was held not to be a ratification.    "It would be contrary to the benign principles of the law, by which the imbecility and indiscretion of infants are protected from injury to their property, that a mere acquiescence, without any intermediate or continued benefit, showing his as-

sent, should operate as an extinguishment of his title."
The same doctrine is asserted in *Jackson* v. *Burchin*, 14
Johns., 124. In *Bool* v. *Mix*, 17 Wend., 120, the same
principles are recognized, though it is said in this case, re-
ferring to the cases of *Carpenter & Jackson* v. *Burchin*,
that had the land in controversy been held by adverse
possession, this fact, together with the long acquiescence,
would have been deemed a ratification.

The cases above referred to, contain within them, many
citations to others, which assert the same doctrine.    In
the last case we have quoted, we find a remark, in the opin-
ion of the court, which bears with double force upon the
case before us :  " Deeds procured by duress, or executed
by persons of unsound mind, stand upon nearly the same
footing as infancy." In the present cause, infancy and
fraud, or its elder brother, duress, are shown.  The remain-
der of the opinion goes on to show that, before a suit can
be instituted to recover the land, or the person holding
under such deed from an infant, can be considered a tres-
passer—the infant, having become of age, must, by an act
as notorious as the deed, disaffirm the deed.  This is all
true, and herein is the distinction  between such cases and
this cause.  Those are suits to recover the land—action in
law—this, to avoid and cancel a voidable contract, by ap-
plication to a court of equity—and in regard to wild lands,
subject to no such adverse possession, as is contemplated
in  law.  This is the notorious disaffirmance which, as we
have before said, would, in an action at law to recover the
land, be a complete avoidance of the contract.

It has been said, in defining what such a  " notorious "
act as disaffirms the contract, would  be, that to give, and
put upon record a deed to another person, comes within
the definition.  If, then, the deed sought to be annulled,
be not cancelled, for the reason that this complainant has
not, in a sufficiently notorious manner, revoked his deed
to Edgar, the door is only opened for more litigation, and
complainant must put upon record his deed to " A.," who
will be enabled to recover at law.  If this be an objection

to the present bill, that it does not allege this notorious revocation, it must be raised by demurrer; and we can scarcely think a demurrer would be sustained, which alleged that there was no equity in the bill, because complainant had not done that which, in his bill, he seeks to do—avoid a voidable contract. This is the "notorious revocation" required to avoid at law. In *Sucker* v. *Moretana*, 12 Curtis, 21—a later case—the doctrines of the forgoing cases are asserted and affirmed. See, also, *Lessee of Drake* v. *Ramsey*, 5 Hammond, 251; Parsons on Conts., 272, and notes and cases therein referred to.

The positions we seek to establish, are so fully recognized and asserted in all the authorities, that we refrain from making more citations. We find no authority where the circumstances of the cause have so many forces tending to make void the contract. A "claim-club" not only imposing upon, but absolutely forcing and driving "the imbecility and indiscretion of an infant" into a contract, never can extinguish his title, merely because he has acquiesced for a year and a half in the outrage they committed upon him. Force, duress and fraud, are things which time cannot cure. And equity jurisprudence, goes still further. An infant, who, after he becomes of age, but is ignorant of his rights, affirms a contract made during his minority, can obtain relief against such contract. Especially where the parties with whom he contracts, knew what his rights were.

This cause, then, being for the purpose of avoiding a voidable contract, which was forced upon complainant—and this is *prima facie* proven by the fact, that it was without consideration—we think, a court of equity will not hesitate a moment to cancel the deed, even if it were a mere voluntary conveyance; much less, where it was obtained by duress.

*E. W. Eastman,* for the appellee.

The defendant contends: 1. The evidence does not estab-

lish any duress, but does show a voluntary conveyance; 2. The plaintiff never owned the land, but was the trustee of Anson T. Prouty, if he had any title; 3. The plaintiff was not an infant when he executed the deed; 4. The plaintiff is bound by the deed, even though he was an infant: *First*, By his own fraud; *Second*, By not refunding what he has received.

I. There is no evidence tending to show any compulsion upon plaintiff, except that of Henry Rogers, and that is entirely contradicted by that of Evan Adamson and Jesse Rickman. The plaintiff had not executed either of the bonds, or been even consulted, unless, by his father, about the matter, till he came to Adamson and inquired for the defendant, and said he desired to make the deed. The deed was made at his own suggestion. I deem it useless to argue this part of the case any farther.

2. The plaintiff never owned the land in dispute, but held the title, if he had any title, in trust for Anson T. Prouty. If plaintiff was in fact a trustee of A. T. Prouty, it matters not whether he was of age or not, for a minor is competent to be an agent or trustee. Story on Agency, sections 7 and 8; 1 Blackstone, 465; 1 Bouv. Inst., 231; 2 Ib., 3. If plaintiff was a trustee, he could be compelled to execute a deed. " Whatever an infant is bound to do by law, the same shall bind him, though he do it without suit." 2 Greenleaf's Cruise, Title 32, section 13.

Though the land in dispute was entered at the land office, in the name of plaintiff, yet there is not sufficient evidence to vest the title in plaintiff. 1. There is not a sufficient delivery of title and possession; 2. There is not a sufficient acceptance of the property by plaintiff; 3. The plaintiff never paid any consideration for the property. The evidence is that A. T. Prouty gave fifty dollars to witness, Duly, and directed him to enter the land in plaintiff's name, which he did, and on his return, gave the duplicate to said A. T. Prouty. There is no evidence that plaintiff had any knowledge that the land was entered in his name, until after A. T. Prouty gave his penal bond to

the defendant. And there is no evidence that the duplicate was every delivered to plaintiff. This duplicate is by statute, (Code, section 2435), made evidence of title. The delivery of the duplicate, in this case, amounts to the same thing as the delivery of a deed. And, as there was no consideration paid, there certainly could be no title or interest in the estate, without a delivery of title papers.

"Every conveyance requires two parties; namely, a grantor, or giver, and grantee, or receiver; and two acts, namely, the grant or gift, and the acceptance of it. The property may be offered to another to become his, if he will have it, but until he accepts it, the title remains in the former owner unchanged." "When there is no duty, it seems difficult to maintain that the estate passes out of the grantor immediately upon the formal execution of the deed, in the absence, and without the knowledge of the grantee." 2 Greenleaf's Cruise, Title 32, note to section 25, by Mr. Greenleaf. In the celebrated case of *Thompson* v. *Leach*, 2 Vent., 198, it is said that "a man cannot have an estate put into him in spite of his teeth." Though the title in this case may have passed to plaintiff, (of which there is a doubt, as I will show), yet the *estate* did not pass without a delivery of the title papers, and the acceptance of the estate.

In the case of *Harrison* v. *The Trustees of Phillips Academy*, 12 Mass., 461, it is said: "It is very certain that until the deed was accepted by Harrison, the title of the estate had not passed out of Holden, [the grantor], for no man can make another his grantee, without his consent, and a deed made to a man, with all the requisite formalities, and even entered in the public register, would be null, if not afterwards accepted by the grantee."

Again in *Maynard* v. *Maynard*, 10 Mass., 456, the father executed a deed to his son, and put it on record. In about a year after the son, who lived with his father, died, and the father got the deed from the place of deposit, and claimed the land. The court said, "We are satisfied the title never passed out of the demandant, and that there-

fore, he is entitle to recover." See, also, "Additional Notes," at the end of that case, in late editions. There was, therefore, neither a delivery nor acceptance in this case, sufficient to pass the estate to plaintiff. He never received the duplicate, and never by any act accepted of the estate, till he commenced this suit.

But as the duplicate, which is made evidence of title, was executed by a third party, instead of the father, (A. T. Prouty), it may be that the court will hold that the title passed to plaintiff. If so, then the estate did not pass, but plaintiff held it in trust for A. T. Prouty, till he made the bond to defendant, and from the time that defendant paid the sixty dollars, he held it in trust for defendant. The fact that plaintiff voluntarily executed the deed, as required by the bond of A. T. Prouty, is presumptive evidence that plaintiff then believed that he held the title in trust for defendant, for "the presumption is, that people act honestly." An after acceptance cannot revert back, so as to affect "intervening rights." 12 Mass., 461. The plaintiff paid nothing for the land. A. T. Prouty paid the money. "Where land has been purchased in the name of one person, and the consideration given or paid by another, there is a resulting trust in favor of the person who paid the money." 1 Greenleaf's Cruise, Title 12, sec. 42; 4 Kent, 305, margin; 2 Story's Eq., sec. 1201; 2 Bouv. Inst., 326; 1 Greenleaf's Ev., sec. 266.

It may be said that this was an advancement by the father to the plaintiff. "Whether a purchase by a father, in the name of his infant child, is to be deemed an advancement to the child, or a resulting trust to the father, is a question of intention, susceptible of proof by parol testimony, when such testimony is not contradictory to the deed." 1 Greenleaf's Cruise, title 12, 380, note (1) by Mr. Greenleaf. The intention, in this case, clearly appears from the acts of the father. He paid the money, and received and retained the duplicate, and sold the property, and gave his bond for a deed. The title was never delivered by him. And even though the evidence might not

be sufficient to compel the plaintiff to convey to A. T. Prouty, yet it is certainly sufficient for the court to refuse to require the defendant to convey back to plaintiff, after his solemn admission by his act of conveyance, that he held the land in trust. In the case of *Jackson* v. *Matsdorf*, 11 Johns., 91, the father purchased a farm and caused it to be conveyed to his daughter, "for the purpose of avoiding some expected difficulties to the father." It was held not to be an advancement to the daughter, but a resulting trust to the father. In the present case, the defendant had a "claim" upon the land, which was a legal subsisting interest in it at the time it was entered. See *Hill* v. *Smith*, Morris, 70 ; *Freeman* v. *Holliday*, Ib., 80 ; *Zickafosse* v. *Hulick*, Ib., 175 ; *Wilson* v. *Webster*, Ib., 312 ; *Hughell* v. *Wilson*, Ib. 383 ; *Starr & Burgess* v. *Wilson*, Ib., 438—and the noted case of *Cunningham* v. *Deperd*, Ib., 463. This claim of defendant, made the act of A. T. Prouty a species of fraud, to cover up the ownership.

III. The plaintiff was not a minor. The evidence on this point is conflicting. It consists of the declarations of the family—the report in community—the deposition of the mother, and the declarations of defendant. "The party alleging infancy must prove it." 1 Greenl. Ev., section 81 ; 2 Ib., section 362. "An infant's age may be proved by his own declarations." 2 Greenl. Ev., section 363. An infant is bound by his representations. 6 N. H., 349. There is not sufficient evidence in this case, for the court to find that the plaintiff is not of age, which the court must do, to set aside the deed and decree of the district court. We have the positive and voluntary declarations of plaintiff, that he was of age, in addition to family talk, which will certainly more that balance the evidence of that feeble old woman, over seventy years of age, and who has, at former times, in comparing the age of plaintiff with others, given him a different age.

IV. But even if it were admitted that the plaintiff owned the property, and was a minor, he is bound by his deed. A contract of an infant is not void, but is either

binding or voidable. 13 Mass., 239; 2 Kent, 234; 2 Greenleaf's Cruise, Title 32, 18, 19; American Leading Cases, 116. "An infant is bound, in equity, by a contract made through his fraud. 1 Blackst. Com., 466, latter part of note 17; 9 N. H., 448, and cases there referred to; 1 Kinney's Law Comp., 202, 422, 463; 6 N. H., 349. No person will be allowed to allege his own fraud, to avoid his own deed. 2 Greenleaf's Cruise, Title 27, 497. "If a man stands by and sees his property sold, and signs his name as a witness, he is bound by the sale. This applies to women and minors." 1 Story's Eq., sec. 385; 2 Kent, 240, note (1). The plaintiff in this case did not exactly sign as a witness, but he executed the deed, which is about the same thing. It admitted the right of A. T. Prouty to sell it. If the plaintiff was an infant, as he now alleges, then by his fraudulent representation, he obtained from the defendant the bond of A. T. Prouty, and E. Adamson, which was his evidence of payment for the land, and the basis of his right to enforce a title or recover damage.

It may be said that plaintiff never received any consideration for this land, which Rogers said was worth two hundred dollars. To this, I reply, first, that Rogers' evidence is not competent. He testified to the value at the time the deed was made, and not at the time the first bond was made. All of the value of the land at the time it was entered, over $1,25 per acre, belonged to defendant. It was his "claim," or improvement. He was in possession of the land by the invitation of the government, and could not be ousted from it until he had been paid for his improvement. *Hill* v. *Smith et al.*, Morris, 76; *Pierson* v. *David et al.*, 1 Iowa, 28; *Thredgill, Adm'r*, v. *Goodloe*, 12 Howard, 36; *Bush* v. *Marsh*, 6 Howard 290. This was a case from Iowa. A. T. Prouty, therefore, could not, by his purchase, divest the defendant of his interest in the land, and of course could not vest a perfect title in the plaintiff. The sixty dollars, therefore, may be deemed a full consideration for the land. From these facts, this court cannot find that there ever was a

perfect title in plaintiff. If plaintiff had a real interest in the land, the sixty dollars was received in trust for him, and by making the deed he confessed it. But an injury to the grantee, is as good a consideration as a benefit to the grantor. The plaintiff received the defendant's bond, and passed it over to the makers. This was an injury to the defendant. Again, a consideration moving from a third person, is as good as one direct from the grantee, and such conveyances are usual.

"A minor must refund the money he has received, before he can rescind his contract." 15 Mass., 363; 1 N. H., 75; 6 N. H., 338; 12 Verm., 28; 21 Ib., 495; American Leading Cases, 116; 7 Cowen, 182; Story on Contracts, sec. 42; 2 Kent, 240, (margin); 17 Wend., 119; Code, sec. 1488; 4 Blackf., 240; 1 Bouv. Inst., 230. The plaintiff has not refunded, nor offered to do so, in this case. He holds the sixty dollars, the bond, and the two hundred acres of land. To use a quaint saying, he "has carried off the mill and is now back after the dam." Is he entitled to the land, and the pay for it? See *Cunningham* v. *Deferd et al.*, Morris, 465. The plea of infancy was designed as a shield to protect the rights of infants against their own indiscretion, and the deception of dishonest men. It was never designed as a sword to attack the rights of others. The most of the cases of avoiding contracts made by infants, are cases at law. The law will not hold an infant to his contract which is injurious to him; neither will equity assist him to wrong others. The maxim that "he who asks equity, must do equity," is as applicable to infants as to adults. There are many cases in which courts of equity will not compel an infant to perform his contract, yet when he has performed it, the court will not assist him to rescind it.

"The court of chancery will not lend its aid to carry a deed into execution, unless it is supported by some consideration. For equity is remedial only to those who come in upon an actual consideration. So that, although a voluntary conveyance which is good in law, is sufficient like-

wise in equity; yet a voluntary defective conveyance, which cannot operate at law, is not helped in equity in favor of a bare volunteer, when there is no consideration expressed or implied." "There must not only be a consideration in equity, as a motive for relief, but it must be a stronger consideration than what is on the other side. For, if it is only equal, then the balance will incline neither way, and the court will not interfere. Thus, where there are two conveyances, without consideration, of the same land, the court of chancery will not relieve the latter againt the former, so that he who has the legal estate will hold it." 2 Greenl. Cruise, Title 32, sec. 39; 1 Story's Eq., sec. 433; 2 Ib., sec. 787. "The same rule is applicable to imperfect gifts—to imperfect voluntary assignments of debts and other property—to voluntary executory trusts— and to voluntary defective conveyances." 2 Story's Eq., sec. 793.

In this case, there was no question by A. T. Prouty, or any one else, that plaintiff owned the land. They treated plaintiff as trustee. There was at most only a "defective conveyance" to plaintiff, for plaintiff had paid nothing, and had not received the title papers, and has never had possession of the duplicate, and has not shown by the records of the recorder, as required by the Code, (sec. 1488, 1489,) that the land was even entered in his name. The plaintiff, then, by his voluntary conveyance, admitted that he was a trustee of A. T. Prouty, and thus made it the conveyance of A. T. Prouty. The fact that defendant and A. T. Prouty were ignorant of the law, that a minor could be a trustee, and that his deed would be good, cannot affect the equitable rights of defendant, nor give plaintiff any better title than he can prove by the record, that he received and accepted, before the bond of A. T. Prouty was executed.

*Samuel A. Rice*, on the same side, in his argument, cited the following authorities: *Pinchard* v. *Brown*, 4 N. H., 399; 3 Ib., 173. *Sullivan* v. *McLenans*, 2 Iowa, 437; Adams Eq., 305; margin, 143; 8 N. H., 193; Sugd.

Vend., 414; Spencer's Eq., 194; 1 Johns. Ch., 261; 2 Story's Eq., 789; 7 Vesey, 264; 2 Johns. Ch., 537. *Storrs & Brooks* v. *Barker*, 6 Ib., 166; 1 Story Eq., sec. 385; 2 Spencer's Eq. Jur., 32; Story on Agency, sec. 7 and 8; 1 Black., 465, margin; Bingham on Inf., 11; 2 Kent, 234; 13 Mass., 239; 1 Am. Lead. Cases, 104; 1 Iowa, 380; 9 N. H., 449; Bacon's Abridg. Inf., 3; 2 Vesey, 212; 1 Brown's Ch., 358; Fonb. Eq., 80, note g; 2 Vern., 224; 3 Burr, 1802; 12 Searg. & R., 399; 12 Verm., 28; 3 Edw. Ch., 222; 15 Mass., 363; 1 N. H., 75; 6 Ib., 338; 12 Verm., 475; 2 Iowa, 114; 1 How., 231; 13 Vesey, 140; 1 Greenl. Ev., sec. 103.

STOCKTON, J.*—There is no evidence that the complainant was compelled to execute the deed of conveyance to defendant, by force or duress, or that it was obtained from him by any fraud, covin or misrepresentation. The allegations of the petition in these particulars, are wholly denied by the answer, and are not sustained by the evidence.

If complainant was an infant at the time of executing the deed, of which fact some doubt may be entertained, upon an examination of the whole testimony, there can be no doubt that he represented himself at the time, to be of full age, and that defendant, from these representations to himself and to others, had good reason to believe him to be of full age. On the day the deed was executed, the complainant sent word to defendant, that he wished to make the deed; that he was of full age; and could then make as good a deed as he ever could. Under such circumstances, it is not permitted to complainant to disaffirm his contract. Code, sec. 1489.

But complainant never had any beneficial interest in the land. It is shown, beyond all controversy, that the money

---

* WRIGHT, C. J., having been of counsel, took no part in the decision o this cause.

to purchase it, was furnished by Anson T. Prouty, the father, with directions to have the title taken in the name of the son. It was taken in his name accordingly, and complainant admitted to one of the witnesses, that this was done " to *devil* Edgar, or to put him to some trouble, anyhow." The complainant was but the trustee of Anson T. Prouty, holding the title of the land for his use and benefit. Edgar had purchased the land of the father, and paid him for it. When the time came for the execution of the deed, it was found that the title was in the son, and he was a minor. When this fact became known, the testimony is, that the " claim-club " met, and compelled Anson T. Prouty, the father, to give bond and security for the conveyance of the lands by complainant, when he arrived at the age of twenty-one years. The father said to the witness, that in consequence of his having entered the defendant's land, " he had to give the bond, or do worse." If there was any duress, it was in requiring Anson T. Prouty to give this bond. This, however, is not a matter of grievance to the petitioner, and he cannot, in any manner, take advantage of it, to invalidate the conveyance made by him to defendant. He was only the depository of the title, holding it for the father. Having made the conveyance, his connection with the matter was at an end. Anson T. Prouty should have sued to set aside the sale and conveyance to defendant, whether for the duress in obtaining the bond, or for the infancy of complainant, at the time of the execution of the deed.

There is nothing on which complainant can base any claim whatever to the land. Holding the title as he did, for the benefit of his father, who had sold the land to defendant, and received the purchase money, we do not see how, even if his infancy was conclusively established, he could have resisted the claim of defendant for the conveyance of the legal title. He would have been required in equity to convey. " Whatever an infant is bound and compellable to do at law, the same shall bind him, although he does it without suit. Therefore, where an in-

fant re-conveyed lands, which had been mortgaged to his father, the mortgage money having been paid off, the conveyance was held good." 4 Greenleaf's Cruise on Real Property, Title 32, ch. 2, sec. 13. *Zouch* v. *Parsons*, 3 Burrows, 1794; 2 Kent's Commentaries, 234. So, where a father had purchased land in the name of his infant son, for the purpose of defrauding his creditors, and had afterwards sold the land to a purchaser for a valuable consideration, and the infant had, at the father's instance, conveyed the legal title to the purchaser, it was held that he could not, after age, avoid his conveyance, because, though the legal title was cast upon him by the fraudulent conduct of his father, he had no right to the land against a creditor or purchaser; and therefore, when he conveyed to the purchaser from his father, he merely parted with the naked title, and only did that which a court of equity would have compelled him to do, and which, if disaffirmed, he would be compelled to do again. *Elliot* v. *Horn*, 10 Ala., 348; 1 American Leading Cases, 249.

Decree affirmed.