THE DES MOINES INSURANCE COMPANY v. O. D. McIN-
TIRE AND J. A. McINTIRE. Apppellants, *et al.*

**Fraud:** REPRESENTATIONS. A false representation by an agent for the sale of territory in which to sell a patent right, as to the price asked by the principal, and that the agent could get a better bargain from the principal than an intending purchaser could, by which the latter is induced to pay a much greater sum than the principal asked, is not such fraud as will vitiate the transaction. In a case where the parties deal at "arm's length," such statements are mere "trade talk."

**Homestead:** JOINT DEED: *Trusts* The joinder of a wife, living separate from her husband, in a mortgage of the homestead made by the trustee, is not necessary to its validity, where both husband and wife had previously joined in a deed conveying the land in trust, with full authority in the trustee to convey the same, and execute all necessary conveyances and contracts.

**Infants:** TRUSTS. A mortgage executed by a minor, on land held in trust for him by his father, at the instance of the latter, is binding on the father.

**DISAFFIRMANCE OF NOTE:** *Bona fide purchaser.* Where the payee of a note takes it, knowing that the maker is a minor, and the minor, within a proper time, disaffirms it, and returns the consideration, the note cannot be enforced against him by a *bona fide* purchaser, before maturity.

*Appeal from Clay District Court.*— HON. GEORGE H. CARR, Judge.

SATURDAY, OCTOBER 10, 1896.

SEPTEMBER 18, 1893, the plaintiff filed its petition in equity for judgment on a promissory note, and for decree foreclosing a mortgage on certain real estate, given to secure the payment of said note. The note set out is dated May 30, 1892, for two thousand two hundred and fifty dollars, payable to S. A. Hewling, or order, three years after date, with interest at eight per cent., payable annually, signed, "O. D. McIntire,

J. A. McIntire," and indorsed by S. A. Hewling to E. M. Clark, and by Clark to the plaintiff, each indorser guarantying payment. The mortgage set out is executed and acknowledged by defendant, O. D. McIntire, and provides that default in the payment of interest for three months after due, shall render the whole debt due. Plaintiff alleges that it purchased said note from E. M. Clark, before its maturity, to-wit, January 23, 1893, and paid the full face value, and accrued interest, therefor, and that default was made in the payment of the interest due, May 30, 1893, wherefore the whole debt became due. F. P. Ryerson was made defendant, as claiming some interest in the real estate. Judgment is asked against the makers and indorsers of said note, and a foreclosure of said mortgage. The defendants, O. D. McIntire and J. A. McIntire, filed their answer and cross-bill, denying every allegation in the petition, except that they signed the note and mortgage, that the mortgage was filed for record, and that Hewling and Clark made the guaranty as alleged. The allegations of the answer and cross bill are quite extended and difficult to summarize, but the following is, we think, the substance of what is alleged: (1) That Hewling and Clark conspired together to defraud defendant, J. A. McIntire and his wife, out of the land, and, by false and fraudulent representations, induced these defendants to execute said note and mortgage; that the same was deposited in escrow to be delivered on the happening of an event named, which did not occur; and that said note and mortgage were never delivered, but were fraudulently obtained by Hewling, and are wholly without consideration. (2) That at the time said note and mortgage were executed, O. D. McIntire was a minor, not doing business for himself; that Hewling then knew those facts; and that O. D. McIntire disaffirmed said note and mortgage, and delivered to

Hewling the consideration received therefor. (3). That at the time said note and mortgage were executed, O. D. McIntire held the legal title to said land in trust for J. A. McIntire and his wife, A. J. McIntire, under an agreement not to sell or mortgage the same without their consent; that Mrs. McIntire did not know of, or consent to the execution of this mortgage; and that at that time, and for many years prior, Mr. McIntire and his family had lived upon said land. They allege that plaintiff bought said note with knowledge of all the facts alleged in their answer, and that it is not a *bona fide* purchaser without notice. They ask that said note and mortgage be canceled, that plaintiff's petition be dismissed, and for costs. Plaintiff, in reply, denies every allegation in said answer and cross-bill, and alleges that O. D. McIntire, at the time of executing said note and mortgage, held himself out as being of age, and engaged in business for himself, and that Hewling and Clark were led to believe he was of age. Defendant Ryerson made no appearance, and the case was continued as to defendants Hewling and Clark, and trial had upon the issues joined between the plaintiff and the defendants O. D. McIntire and J. A. McIntire. Decree was entered dismissing plaintiff's petition as to O. D. McIntire, and for judgment on the note against J. A. McIntire, and foreclosure of the mortgage as against all right and title of J. A. McIntire and A. J. McIntire to said land. Defendants O. D. McIntire and J. A. McIntire appeal.—*Affirmed.*

*Cory & Bemis* and *H. McNeil* for appellants.

*A. C. Parker, Richardson & Buck,* and *J. S. Clark* for appellee.

GIVEN, J.—I. We first inquire as to the alleged minority of appellant, O. D. McIntire, and the effect

thereof. The evidence shows that, at the time of executing this note and mortgage, his age was twenty years and six months, and tends to show that he had previously transacted some business for himself. In the view we take of the case, the question of his minority is immaterial, so far as the validity of this mortgage is concerned. As will be seen hereafter, he held the title to the land, in trust for his father, under an agreement not to convey or incumber without his consent, and that he executed this mortgage with the knowledge of his father, and at his instance, and for his benefit. Appellants' counsel cite many authorities, announcing the law as to contracts made by minors, and their rights to disaffirm the same, but they have no application where the minor contracts, as a trustee, at the instance of his *cestui que* trust. In giving this mortgage, O. D. McIntire was not called upon to exercise his judgment, but to act upon the judgment of his father, and, while the mortgage is, in form, that of the son, it is, in effect, that of the father. *Prouty v. Edgar*, 6 Iowa, 353; *Bridges v. Bidwell* (Neb.) (29 N. W. Rep. 302.) Let it be conceded that O. D. McIntire was a minor, had not been doing business for himself, and that Hewling and Clark knew these facts; yet, under the law and the facts, his minority does not affect the validity of this mortgage. In executing the note, O. D. McIntire acted in his individual capacity, and as to it, the law as announced in the cases cited by appellant's counsel, applies. O. D. McIntire was a minor when he signed that note, and we do not find that he had previously so engaged in business for himself as to render it binding upon him. Hewling took the note, knowing that O. D. McIntire was a minor, and that he had the right to disaffirm it, as he afterwards did. We think this plea of minority

is a complete defense to the note, so far as O. D. McIntire is concerned, but not so as to the mortgage.

II. Appellants contend that as the land was occupied by J. A. McIntire and family as a homestead, and as his wife did not join in or consent to the execution of this mortgage, the plaintiff is not entitled to a foreclosure as against her. The facts concerning the title to this land are these: For some years prior to the spring of 1882, J. A. McIntire and family resided in Warren county, Iowa, the family consisting of his second wife, Alice J. McIntire, to whom he had been married in February, 1881, and his two sons, of whom O. D. McIntire is one. J. A. McIntire was then the owner of the quarter section of land in Clay county, in controversy. About eleven months after their marriage, Mrs. McIntire left her husband, and returned to reside with her father; and soon thereafter Mr. McIntire and his children went to live upon the land in Clay county, and continued to reside thereon up to the time of the trial of this case. In January, 1893, Mrs. McIntire went to live with her husband on said land, and still resides with him thereon. There is evidence tending to show that this long separation between Mr. and Mrs. McIntire, was because of her dislike to remove to Clay county, and a desire to return to and care for her father and his family, who were so circumstanced as to need her assistance. While these considerations may have influenced Mrs. McIntire's conduct, we are satisfied that the separation was, in part at least, because of difficulties which had arisen between them. Soon after Mrs. McIntire had returned to reside with her father, to-wit, March 6, 1882, Mr. and Mrs. McIntire joined in a deed of the Clay county land to T. E. McIntire, which deed contains the following: "This conveyance, as made to the said T. E. McIntire in trust, and as trustee for J. A. McIntire, with full power

and authority to sell and convey the same in his own name as trustee, and execute all necessary conveyances and contracts therefor, without any intervention or signature of the grantors, or either of them herein, and all the proceeds, of whatever nature and kind, the said trustee shall deliver and pay over to said J. A. McIntire, and the said Alice J. McIntire has no interest in said proceeds." J. A. McIntire testifies that this deed was made "because we were not living together, and that is all the reason. I could have held the title. It was because, if anything happened me, it should go to her children. I had one child from her. I want the land to go to the children, and that is the only reason. I did not want my wife to have any. The land was mine when I married her. It was to prevent my wife from controlling it, and so I could do so." The purpose of this conveyance was evidently to divest Mrs. McIntire of all interest in the land. J. A. McIntire wrote to his brother, T. E. McIntire, to deed the land to his son, the defendant, O. D. McIntire; and thereupon, on September 19, 1890, T. E. McIntire, for the named consideration of one thousand dollars, but without any consideration, in fact, to be paid, conveyed the land, by deed of general warranty, to O. D. McIntire, absolutely. This conveyance does not express any trust, but it is contended, by appellants, that O. D. McIntire received it under an agreement to hold the land in trust, and not to sell or incumber it without the consent of both J. A. McIntire and Alice J. McIntire. While the deed is absolute on its face, we are satisfied that it was intended to be in trust for J. A. McIntire, and that the land should not be conveyed or incumbered by O. D. McIntire, without his consent; but we think it is entirely clear, that it was not in trust for Mrs. McIntire, nor was there any agreement, that it should not be conveyed or incumbered without her

consent. She was still living apart from her husband, and there does not seem to have been any intention to reinvest her with any interest in the land, nor to make her consent necessary to a disposition of it. Such was the state of the title when, on May 30, 1892, O. D. McIntire, with the knowledge and at the instance of J. A. McIntire, executed the mortgage sued upon. Under these facts, it was not necessary to the validity of this mortgage, that Mrs. McIntire should have joined in, or consented to, its execution. By the deed to T. E. McIntire, she parted with all interest in the land for the benefit of her husband, and nothing had occurred thereafter to reinvest her with any homestead or other right in the land. J. A. McIntire, for whom alone the land was held in trust, authorized the giving of this mortgage; and therefore, if plaintiff is entitled to a foreclosure, it is entitled to it as against all interests in the land.

III. We next inquire as to the alleged fraud. The evidence as to the transaction in which this note and mortgage were given is conflicting, and the claims of the appellants various and somewhat inconsistent. The evidence and claims of the parties cannot be set out within a reasonable limit, but the following we think, is sufficient for an understanding of the controlling questions: Defendants Hewling and Clark were each agents for W. W. and C. C. Claypool, patentees and owners of the Claypool windmill attachment and grinder, for the sale of certain states, and were each the owner of certain territory. Prior to the transaction under consideration, J. A. McIntire purchased twenty-one or twenty-two counties of Iowa from Hewling, for which he gave his three promissory notes, one for two hundred dollars, one for two hundred and ten dollars, and one for two hundred and fifty dollars. He also purchased the state of Kansas from Clark, giving his eight promissory

notes, two hundred and fifty dollars each, therefor. Thereafter McIntire and Hewling joined in trading Kansas and Missouri, which Hewling owned, for land in Kentucky. The transaction in question occurred on the thirtieth and thirty-first days of May, 1892. On that occasion this note and mortgage were executed, also a deed under said patent for the state of Ohio to A. J. McIntire, and a like deed to Otis McIntire for the state of Indiana. These deeds are signed, "Charles Claypool, per E. M. Clark." They each recited a consideration of one thousand five hundred dollars, and were delivered to the grantees. At the same time J. A. McIntire made an application through one Childs for a loan on his land, and a contract was entered into with respect to this note, mortgage and loan. The claims of appellants are that J. A. McIntire, Hewling and Clark were partners for the purchase and sale of this territory; that, when it was proposed to purchase the states of Ohio and Indiana, Hewling and Clark represented that Claypool's price was two thousand dollars for each state; that McIntire said he would see the Claypools, and get them cheaper, whereupon Hewling and Clark represented that they were special friends of the Claypools, and that they could get a better bargain than McIntire could; that, if he went to the Claypools, they would think they had a new purchaser, and that it would prejudice them in purchasing. Hewling represented that he would go and see the Claypools, and get their lowest price, and he afterwards returned, and represented he had seen them, and their lowest price was one thousand five hundred dollars for each state. Appellants contend that each of said representations was false; that the Claypools only asked one hundred dollars for each of said states; and that they were induced by said false representations to execute said note and mortgage. They further

contend that the loan sought to be effected through Childs was for the purpose of enabling appellants to raise money to pay J. A. McIntire's share of the purchase price of said states; that it was agreed that the note and mortgage should be left with Childs, to be delivered if the loan was effected, and to be returned to appellants if it was not; that the loan was not effected; and that Hewling, in some way, wrongfully got possession of the note and mortgage. Other representations are charged to have been falsely made, but, as they were mere expressions of opinion and what is usually designated as "trade talk," they need not be noticed.

We think the evidence fails to sustain the claim that there was a co-partnership. The dealings by these parties were in some instances for their mutual benefit, but in no instance are the elements of a co-partnership shown to have existed, certainly not as to the purchase of Ohio and Indiana. McIntire was unable to meet his said notes that were unpaid. He solicited Hewling to assist him, and, by arrangement between Hewling and Clark, these notes were turned over to Hewling, and they and the deeds for Ohio and Indiana constitute the consideration for the note in suit. There is no doubt but McIntire made an application through Childs for a loan, but this note and mortgage were not given in anticipation of that loan, but on account of said outstanding notes, and the transfer of Ohio and Indiana. The rate of interest in this note is eight per cent. McIntire thought he could get a loan at a less rate with which to pay this note. To enable him to accomplish this, Hewling agreed to withhold this mortgage from record, and, if the loan was consummated, to surrender the note and mortgage. This note and mortgage were delivered at the time of their execution to Hewling, subject only to this agreement; and,

the loan having failed, it was his right to retain and dispose of them. Appellants' claim that this note and mortgage are without consideration, and that possession thereof was wrongfully obtained by Hewling, is not sustained by the evidence. We are satisfied that Hewling and Clark misrepresented to McIntire the price that the Claypools required to be paid for Ohio and Indiana. These states were reckoned in the settlement on which this note and mortgage were given, at six hundred and fifty dollars each, while in fact the Claypools were willing to take one hundred dollars each. McIntire knew that he was not dealing with Clark as owner of these states, but as agent for the Claypools, and "at arm's length." As such agent, Clark had a right to make the sale himself, and thereby earn the compensation allowed him, and to procure the highest price that he could. That the Claypools were willing to accept one hundred dollars per state from Clark in his accounting as agent, did not restrict him from selling for such greater sum as he could procure, and thereby increase his own compensation. Let it be conceded that McIntire was prevented from going to the Claypools as alleged, and that the price which the Claypools required was misrepresented; yet, as between men dealing as these were, it is not such a fraud as vitiates the transaction. It was mere "trade talk," upon which McIntire had no right to rely. 1 Benjamin, Sales, 562, 250.

IV. On August 10, 1892, these appellants commenced an action against S. A. Hewling and others, to enjoin the transfer of this note and mortgage, and to cancel the same, alleging as grounds substantially the same matters alleged as defenses in this action, except the minority of O. D. McIntire. Appellants contend that said action was so pending as to constitute notice of the matters alleged therein to appellee at the time it purchased this note, while appellee

contends that it was not pending at that time, and that the rule of *lis pendens* does not apply to negotiable paper. As neither of these defenses is sustained, we need not consider these questions. A further contention of appellants is that plaintiff had no authority, by its by-laws or articles of incorporation, to buy or discount notes. We will not extend this opinion by a discussion of the contentions made and authorities cited. It is sufficient to say that, in our opinion, the contention is not supported by the record. We have examined this somewhat complicated case with care, and reach the conclusion that the decree of the district court is correct, and it is therefore AFFIRMED.