JACOB S. BOSLEY v. JOHN R. MONAHAN, Appellant.

**Fraudulent representations as to the value of land.** The representation of an agent as to the price at which land had been listed with him for sale is not a material statement of fact with reference

to its value, the falsity of which can be made the basis of recovery; but a prospective purchaser to whom such price has been communicated is bound to assume that the same is a mere estimate as to its value for selling purposes.

**Same:** CONFIDENTIAL RELATIONS. Confidential relations between the parties may warrant greater reliance on statements concerning the value of land than would otherwise be justified; but the mere fact of acquaintance and friendly relation will not justify the assumption that an agent is consulting the interests of the purchaser rather than his own in making a sale to him.

**Same.** Where a prospective purchaser of land has inspected the tract and has an equal opportunity to consult the owner he cannot rely on the representations of the agent as to the owner's selling price.

**Same:** RESCISSION: RECOVERY OF AMOUNT PAID. The owner is primarily liable for the return of money paid on a land contract, which it is sought to rescind because of an agent's misrepresentations as to the selling price of the land; and the agent cannot be held for a return of more than he actually received of the amount paid, at least until it is shown that the same cannot be recovered from the owner. Weaver, J., dissenting.

*Appeal from Shelby District Court.*— HON. O. D. WHEELER
Judge.

FRIDAY, SEPTEMBER 27, 1907.

REHEARING DENIED, TUESDAY, MARCH 17, 1908.

ACTION to recover damages for false and fraudulent representations made by defendant in inducing plaintiff to become a purchaser of land. Verdict and judgment for plaintiff. Defendant appeals.— *Reversed.*

*Cullison & Yackey* and *H. L. Robertson,* for appellant.

*Byers, Lockwood & Byers,* for appellee.

McCLAIN, J.— The allegations of the petition present several grounds of recovery, but the one ground on which the case was submitted to the jury was, briefly stated: That plaintiff and defendant being residents of the same county in this

State and mutual acquaintances, and defendant having an arrangement with one Meek, a real estate agent in Missouri, by which defendant was to share in the commissions on sales of Missouri land for which Meek should procure a purchaser through defendant's assistance, defendant induced the plaintiff to go with him to Missouri to look at land, and while there introduced plaintiff to Meek, who took him out to inspect a certain farm, which may be sufficiently designated as the " Vaughn Farm," containing about six hundred and six acres, which Meek represented to be in his hands for sale; that defendant stated to plaintiff, after the inspection of the farm, that it was listed with Meek for sale by the owner at $45 an acre, and if plaintiff bought said farm he would have to pay Meek and defendant $1 an acre commission, or, in all, $46 an acre; that these statements were false, in that the farm was not listed with Meek for sale, and the highest price which the owner asked for said farm was $40 an acre; that plaintiff entered into a contract for the purchase of the farm at $46 an acre, of which amount $5,000 was paid, defendant and Meek dividing between them $3,636 in equal shares, and paying the balance to the owner of the farm on an optional contract by which Meek was to acquire title thereto at $40 an acre; that, on ascertaining the falsity of the statements made by defendant and Meek, plaintiff elected to rescind the contract of sale, and demanded from Meek and defendant the return of the $5,000 paid, and on failure to secure the return of his money instituted this action against defendant for the recovery of the entire amount, alleging the facts as thus briefly stated, with other facts which the trial court considered either immaterial or not shown by any evidence, and therefore did not submit for the determination of the jury. The errors relied on by appellant relate to the entire theory on which plaintiff was allowed to recover, and we can better dispose of the case by determining the correctness of the theory on which recovery was allowed than by considering specific errors alleged to have been committed.

A few other suggestions as to the facts which seem to us material in determining the proper theory on which, if at all, plaintiff should have been allowed to recover against defendant, may be made. There is no claim supported by the evidence that defendant was the agent of plaintiff, nor is it contended that he was in any way interested in the sale of the farm, except that by procuring plaintiff as a purchaser he became entitled to share equally with Meek in any profit realized by the sale of the farm to plaintiff. He entered into no obligation to the owner of the farm, nor did he undertake to contract with the plaintiff as to the transfer of title. There is some controversy as to whether plaintiff's contract of purchase was made with Meek as pretended owner, or through Meek as agent, with the real owner. But it is plain that Meek was not really the owner at the time the contract was made, and up to the time of the making of the contract he had not pretended to be owner, for the representations relied upon by plaintiff as false were that the land was listed with Meek at $45 per acre, and that he and defendant must receive $1 per acre by way of commission if the sale should be effected; the purchase price thus being fixed at $46 per acre. It is to be borne in mind, also, that there was no question submitted to the jury as to the real value of the farm, nor as to the validity of the contract for the purchase thereof on which plaintiff paid his $5,000. It must be assumed that he could have acquired title to the farm by making the remaining payments provided for in the contract, and that he was not misled as to the character of the farm itself, or its value, by anything said by the defendant, unless the statement by defendant that the farm was listed with Meek at $45 per acre and held by the owner for sale at that price was a material representation with reference to value. The case may be disposed of by considering first, whether plaintiff has any cause of action against defendant with reference to the transaction, under the theory on which it was tried, and, second, whether under the evidence plaintiff was entitled to recover

from defendant the entire amount of money paid by plaintiff to Meek under the contract of purchase.

I.   The court in instructing the jury stated the plaintiff's claim to be that he was induced to enter into the contract of purchase of the farm through false and fraudulent representations made to him by the defendant, consisting of the representations that the owner asked $45 per acre for the farm, and that it was listed with Meek by said owner at $45 per acre; and with reference to such alleged false representations the jury were instructed that to entitle the plaintiff to recover plaintiff must show that defendant made such representations to plaintiff, that they were false and untrue to defendant's knowledge, that plaintiff relied upon such representations as true, and was thereby induced to make the purchase, and that plaintiff had been damaged in some amount by reason of such representations.   The jury were then told that, if each and all of said matters were shown by the evidence, then the plaintiff would be entitled to recover; but, if any one or more of said matters were not shown, their verdict should be for the defendant.   And in conclusion the jury were told that, if they found for the plaintiff, their verdict should be for the sum of $5,000.   In other words, with reference to the two alleged misrepresentations submitted to the jury, the court instructed that as a matter of law they were such misrepresentations of fact as to require the finding of a verdict against defendant, if it should appear that defendant made them, that they were knowingly false, and that they were relied upon by plaintiff to his prejudice.

In general representations as to value in the sale of land are treated as statements of opinion, on which the buyer is not entitled to rely, and for the falsity of which he cannot recover damages.   There seems to be a difference of opinion, however, among the courts, as to whether a statement as to the price paid by the seller or the price which has been offered to the seller is a material statement of fact on which

the buyer may rely, or, like a general statement of value, to be treated only as trade talk. This court has taken the view that such statements may be relied on as material representations of fact. *Teachout v. Van Hoesen,* 76 Iowa, 113; *Dorr v. Cory,* 108 Iowa, 725; *Scott v. Burnlight,* 131 Iowa, 507.

It is to be noticed, however, that in each of these cases the exception as to specific representations of facts indicating value is recognized as having been carried further than the

1. Fraudulent Representations as to the value of land. general concurrence of authority would justify. We are now asked to go one step further, and say that the price at which land is put into the hands of an agent for sale is a material statement of fact with reference to the value of the land, falsity of which can be made the basis of recovery. No specific authority for such extension of the exception has been called to our attention, and we do not feel justified in making it. When the owner of land puts it into the hands of an agent for sale at a specified price, he simply limits the power of the agent so that without further authority he cannot bind the owner by making a sale at a lower price. It does not follow that the owner himself believes that the price thus fixed is the real value of his property. It may well be assumed that he is desiring to get a larger sum than its real value if he can; that, recognizing the uncertainty of judgment as to values, he hopes to find a purchaser who is willing to buy at that price; and, recognizing the necessity of negotiation with a possible purchaser who may offer a lower price, he seeks to furnish a basis for such negotiations as favorable as possible to himself. A prospective purchaser, to whom information is conveyed by the agent that the land is held by its owner and listed with such agent for sale at a specified price, is bound, as we think, to assume that such price is the mere opinion or estimate of the owner as to its value for selling purposes. The asking or listing price is a much less specific and definite basis of opinion as to value than the price which has been paid in an ac-

tual sale of the property, or the price which has been offered by a prospective purchaser.

Many representations quite as specific and definite as that involved in the fixing of a price for sale by an agent have been held not to be such as to justify reliance thereon by the purchaser. For instance, in *Gate City Land Co. v. Heilman,* 80 Iowa, 477, it was held that the representation that the cash market value of the lots in a certain addition to a town was $500, and that other lots in the same and adjoining additions were rapidly selling at that price, was rather a representation of opinion than of fact. In *Merritt v. Dufur,* 99 Iowa, 211, it was held that a statement by an agent for the leasing of a farm, that the owner had required a rent of $400 for the land, whereas in fact she had authorized the leasing of it for $250, was not such a false representation as to justify the rescission of a lease; and in *Des Moines Insurance Co. v. McIntire,* 99 Iowa, 50, it was held that a statement by an agent that the owner of a patent right was willing to sell the right for a particular state at $650, and could not be induced to sell for less, while in fact he was willing to take $100, was not a statement on which a prospective purchaser had a right to rely, for, as the court says, conceding that the prospective purchaser was prevented from going to the owner by the representation of the agent that such action would tend to induce the owner to require a larger amount than that stated, such representation was not a fraud of the agent, but mere "trade talk." We reach the conclusion that the statement attributed to defendant would not justify the plaintiff in relying thereon as a material statement of fact with reference to the value of the property, and, as plaintiff would have no right to rescind on account of such misstatement, he could not hold the defendant liable for the damages, if any, resulting to him from acting upon such misstatement, conceding that defendant knew it to be false and intended that the plaintiff should rely thereon.

Confidential relations between the parties may warrant greater reliance on statements as to value that would otherwise be justified. But there were no confidential relations between the plaintiff and the defendant with reference to this proposed sale. Plaintiff did not go to Missouri with the defendant to look at this particular farm, for neither of them had any knowledge that this farm was for sale, until they had visited Meek for the purpose of inspecting another farm, and were advised by him that this farm was on the market. Plaintiff well knew that defendant was making this trip in the hope of effecting a sale of some farm to him, in order to secure his share of the commission from Meek. The mere fact of acquaintance and friendly relations would not justify plaintiff in assuming that defendant was not consulting his own interests, rather than plaintiff's interests, in a purely business transaction. To all intents and purposes, plaintiff and defendant were dealing at arm's length.

2. SAME: confidential relations.

Nor was this a case in which defendant was possessed of some peculiar knowledge or information not available to plaintiff. The latter had inspected the farm and had had an opportunity to consult the owner if he had seen fit to do so. He knew that defendant's information as to the selling and listing price was acquired from Meek, and he could have consulted Meek if he had seen fit. It appears that plaintiff was a man somewhat advanced in years, and that he was temporarily ill between the time he inspected the farm and the time this alleged representation was made to him by defendant; but there is not the slightest evidence that he was not competent to look after his own affairs, or that defendant took advantage of his condition. We find therefore no peculiar circumstances justifying plaintiff in relying on representations of defendant which were not such as a purposing purchaser of land is not ordinarily justified in relying upon, and reach the conclusion that the trial court erred in submitting to the jury, as the basis of a recovery by

3. SAME.

plaintiff against defendant, the question whether the alleged statements as to the owner's selling and listing price of the farm were made.

II.   As already stated, the court instructed the jury that, if they should find for the plaintiff on the issue with reference to the statement as to the selling and listing price of the farm, plaintiff was entitled to recover the amount claimed, to-wit, $5,000, the sum paid by him to Meek, or through Meek, on his contract.   On what theory defendant should be held liable for the entire payment made by plaintiff, under the contract, which he claimed the right to rescind on account of misrepresentations made by defendant, we are unable to discover.   If the plaintiff was entitled to rescind, then his right was to the return of his money.   For any incidental expenses involved in effecting the contract of purchase and subsequently rescinding it, defendant might be liable under the view which the court adopted.   But the defendant was not the seller of the farm, and plaintiff's primary right would be to have back his money from the seller, to whom it had been paid.   There is no evidence that he was unable to recover his money from the seller, whether such seller was Meek holding an optional contract of purchase, or the original owner represented by Meek as agent.   It seems to us that, conceding everything which could possibly be claimed as to defendant's liability, he would not be liable for the full amount of money paid under the contract, until it was shown that it could not be recovered back from the person primarily liable for its return. If the theory of the court was that defendant had participated in the distribution of a part of this $5,000 as commission or profits, then he would be liable, so far as we can see, no further than for the share received by him, i. e., if plaintiff were trying to follow his money, he could only hold defendant liable for the amount which defendant received. The instructions of the court indicate the theory that defendant was liable for the damages caused to the plaintiff, but

4. Same: rescission: recovery of amount paid

under this theory there must be proof of the specific damages suffered, and no such proof was offered. The record does not disclose how much less the farm was worth than the contract price, and the ordinary basis of recovery by way of damages for fraudulent misrepresentation is entirely wanting. Therefore we think that under any theory the instruction of the court as to the amount of recovery was entirely erroneous.

The judgment of the trial court is *reversed.*

WEAVER, J. (dissenting).— The defendant, acting in conjunction with Meek, invited the plaintiff to Missouri, knowing that he was unacquainted with land values there. Concerning the land in question, they falsely represented to him that they had it listed in their agency at a net price to the owner of $45 per acre, to which they proposed to add the sum of $1 per acre as their commission. Relying on these representations, plaintiff undertook to make the purchase on the terms stated; that is, to pay the net price which the owner demanded and $1 per acre commission. As a matter of fact, the owner's price was but $40 per acre, and by this fraud defendant and his confederate received six times the commission which they induced plaintiff to believe they were receiving from him. The bare statement of the facts is sufficient to characterize the conduct of the plaintiff and Meek as grossly fraudulent. By a conscious and systematic scheme of misrepresentation on their part, the plaintiff has lost, and they have gained, a large sum of money. To permit them to retain it is to put the seal of the law's approval upon a gross wrong. It is the province of courts of justice to detect and defeat fraud without regard to the disguises under which it has operated. If there be any case calling more loudly for the exercise of this function than is presented by the record before us, it certainly has not come under my observation. As to the amount of recovery, it is enough to say that, where two or more persons combine to defraud another, the law

will not apportion their liability, and each will be held to answer for the full amount of the damage resulting from their common wrong.

I am therefore of the opinion that the judgment of the district court should be *affirmed.*

LADD, J., joining in dissent.