[Civil No. 1931. Filed February 2, 1922.]

[203 Pac. 1083.]

## B. B. SANDERS, Appellant, v. ALBERT STEVENS, Appellee.

1. BROKERS — MISREPRESENTATION AS TO OWNER'S LOWEST PRICE NOT
ACTIONABLE.—Where an agent represented to the buyer that the
land owner's lowest price was $6,500, when in fact the owner
wanted $6,000 "net to him," and there was no understanding be-

---

1. Liability of broker who overstates to purchaser the owner's
minimum price, note, 21 L. R. A. (N. S.) 305.

1. Liability of broker to purchaser for overstating lowest price at
which owner is willing to sell, note, 8 A. L. R. 1383.

tween the broker and the owner, the right to name the commission was left to the broker, and, when so named, it, with the owner's price, made up the amount to be asked for the property, and became the owner's purchase price, and such misrepresentation was not actionable.

2. FRAUD—DAMAGE ESSENTIAL ELEMENT.—In order that false representations may form the basis of an action for deceit, it must appear, with other facts, that the person to whom they were made acted upon them to his damage.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Reversed.

Mr. D. W. Windes, for Appellant.

Messrs. Thalheimer & Hart, for Appellee.

McALISTER, J.—This is an action by Albert Stevens against B. B. Sanders, in which it is sought to recover $500 alleged to have been paid by the former as the result of certain false and fraudulent representations of the latter regarding the purchase price of certain real estate. The plaintiff was given judgment for $200, and from this and the denial of his motion for a new trial defendant appeals.

One G. R. Finch was the owner of certain real property in Tempe, Arizona, known as the Butte Garage. In March, 1919, B. B. Sanders, appellant herein, as his agent, sold this property to plaintiff, Albert Stevens, for $6,500, a payment of $1,000 being made at the time of the sale. Plaintiff complains that Sanders represented to him that he was commissioned to sell this property for $6,500, with a payment of $1,000 down, and that he believing these representations to be true, was thereby induced to and did purchase it for this sum and pay appellant $1,000 thereon; that subsequently he ascertained that the owner had commissioned appellant to sell the property for $6,000, and not for $6,500, and had required a payment of

only $500 down instead of $1,000; and that appellant had paid the owner $500 of said $1,000, and retained the other $500 for his own use and benefit.

It is not disputed that appellant had been authorized by Mr. Finch to sell the property for $6,000 "net to him," and to have the privilege of selling it for more than $6,000 and retain what he might secure in excess thereof as his commission, but there is an apparent conflict in the evidence as to his representations to appellee regarding the amount of both the purchase price and the initial payment thereon. According to the latter, Mr. Sanders said that Mr. Finch "asked $6,500 for the property, and that he required $1,000 down," while appellant himself testifies that he "told Mr. Stevens it would take $6,500 to buy it," though he neither admits nor denies directly the testimony of appellee on this point. The jury evidently accepted appellee's version of the transaction, for it returned a verdict in his favor for $200, which can be accounted for upon no other theory.

It is contended in behalf of appellant that even though he did represent to appellee that Mr. Finch "asked $6,500 for the property, and that he required a $1,000 payment down," when the actual fact was that he wanted only $6,000 net to himself, a recovery cannot be had, because such representation, if untrue, is not actionable for the reason that there is no duty devolving upon the agent to disclose to the purchaser the owner's lowest price. An examination of the record discloses the fact that the statement was not made in response to a direct question by Mr. Stevens regarding the lowest price the owner would take, but arose in this way: Appellant knew from some source that appellee was looking for a location for a garage and, meeting him in the Farmers' and Merchants' Bank in Tempe on March 7, 1919, asked him if the Butte Garage would suit him. He replied that he

thought it would if he could get it right, whereupon appellant said: "You leave it to me, and I will get you a good price on it." A day or two later they met on the streets and appellant stated to him that he had seen Mr. Finch, and "he asked $6,500 for the property, and that he required $1,000 down."

Under these circumstances and in the sense in which it was spoken, was this statement untrue? If it conveyed to Mr. Stevens the idea that Mr. Finch wanted for himself $6,500 out of the property, regardless of the agent's commission, it was, of course, not true, but it could not have given him this impression because appellant told him at the time that he did not want any commission from him, which necessarily implied that it would be deducted from the purchase price of $6,500, unless Mr. Sanders was negotiating the sale as a matter of accommodation, and there was nothing said or done to justify a conclusion of this kind. Neither would it have been entirely true if it had conveyed the impression that Mr. Finch asked $6,500, less the usual commission of five per cent— $325 instead of $500—but it did not necessarily convey this idea either, and there was nothing else said by appellant from which this conclusion could have been drawn. But in the sense that the owner asked $6,000 for himself and a reasonable commission for his agent it was not untrue, because the manner in which the property was listed with appellant—$6,000 net to the owner—excludes this idea. When property is listed with an agent to sell for so much "net to the owner," the agent is not only thereby authorized, but compelled, to fix the selling price at a sum still larger than the net price, or receive nothing for his services; and, inasmuch as there was no understanding in this case between appellant and the owner as to how much the commission should be, the right to name it was left entirely with the former, and, when

so fixed, it, together with the $6,000 net to Mr. Finch, made up and constituted the amount asked for the property by the latter through this particular agent. It thereby became just as much a part of the purchase price Mr. Finch wanted through Mr. Sanders as the $6,000, for beyond all doubt the latter was empowered by the term—net to the owner—to add his commission, whatever it might be, to Mr. Finch's net price and sell the property for the amount these two totaled. The agent's commission under this arrangement was *pro tanto* as much a part of the purchase price asked by the owner as the net price itself was. The property at the time, according to the record, was listed with other real estate men at $6,500, with the understanding that the owner would pay the commission though it does not appear how much this was to be but Mr. Finch testified that he thought his arrangement with appellant as favorable to him as was the agreement with the other real estate men to them. The statement, then, that Mr. Finch "asked $6,500," was not untrue in the only sense in which, under the facts, it could have been used.

But, conceding that it conveyed to appellee the impression that Mr. Finch "asked $6,500" less the usual commission of five per cent, still such representation would not be actionable, because it was a matter of no concern to the purchaser how the purchase price was divided between the owner and the agent, so long as there is no claim that by reason of such false representation the purchaser paid an excessive value for the property. After deciding that it suited him, appellee, as a prospective purchaser, naturally became interested in the amount the property could be bought for—what the cost to him would be—and when he had ascertained this and satisfied himself of the reasonableness of it there remained but one thing for him

to do to complete the purchase, and that was to pay the amount required. It was no concern of his whether all he paid or merely a part went to the owner, so long as it secured for him the property. The extent of the agent's commission, which he must have known was something, could have been of no possible materiality to him. In discussing facts very similar, though much more favorable to the purchaser than those in this case, the court in *Aronowitz* v. *Woollard,* 166 App. Div. 365, 152 N. Y. Supp. 11, used the following language:

"The defendant had no legal interest in how much the plaintiff was to receive for his services; that was a question between him and the owner. . . . It is immaterial to the defendant whether the plaintiff or the owner has the $500 [commission]. . . . While an agent should not be guilty of falsehood, he has a certain right to commend his property. . . . The plaintiff was not the defendant's agent, and was under no obligation to sell the property to him, except upon his own terms, and under the agreement between him and the owner had a right to obtain the best price he could. A misstatement of fact, so long as it actually did not affect the value of the property, is not actionable. For all that appears the property may be worth much more than the price agreed to be paid."

Some authorities hold, however, that where the agent falsely represents the owner's lowest price when questioned directly by the prospective purchaser regarding it, he is liable for the "surplus [of the price paid] over and above the [net price] and his reasonable commission." *Kice* v. *Porter* (Ky.), 53 S. W. 285; *Estes* v. *Crosby,* 171 Wis. 73, 8 A. L. R. 1377, 175 N. W. 933, 177 N. W. 512. In this case there was no inquiry by the purchaser as to the owner's lowest price, but merely a statement by him that the property would be suitable "if he could get it right." The weight of authority, however, is to the effect

that a false representation as to the owner's lowest price is not actionable, because it is not a representation of a material fact. The following excerpt from *McLennan* v. *Investment Exch. Co.,* 170 Mo. App. 389, 156 S. W. 730, gives the reasoning of the courts holding this view:

"It is idle to talk of the plaintiff having a right to buy the land at the lowest price the owner would take for it. . . . Neither has a legal right to the other's best price, and, therefore, the representation of either that he has made his best offer cannot be said to be a representation of a material fact. To say otherwise would be to impose a restriction on the right of persons to make their own bargains."

See, also, *Ripy* v. *Cronan,* 131 Ky. 631, 21 L. R. A. (N. S.) 305, 115 S. W. 791; *Wrench* v. *Von Schriltz,* 108 Kan. 748, 197 Pac. 197.

In order that false representations may form the basis of an action for deceit, it must appear, in addition to the other necessary facts, that the person to whom they were made acted upon them to his damage; otherwise no cause of action is established. 12 R. C. L. 240. Appellee has not shown that he was damaged by the alleged false representations because there is no evidence that he could have purchased the property from Mr. Finch direct for $6,000, or any other sum under $6,500, if appellant had disclosed to him the amount of his commission. The mere fact that the owner had listed it with appellant to be sold for a certain sum "net to him" does not prove that he himself would have sold it for this amount to a purchaser whom appellant had cause to approach on the subject. For him to have done so knowingly would have been profiting from appellant's labors without paying for them, a thing that the law, to say nothing of square dealing, does not permit.

The judgment is reversed, and the cause remanded, with directions to the superior court to enter judgment for appellant.

ROSS, C. J., and FLANIGAN, J., concur.