The appellee, whom we will refer to as complainant, filed her bill of complaint in the Circuit Court of Orange County, against W. H. Huttig, the appellant, wherein it was alleged in substance that relying upon the representations hereinafter referred to she had purchased 160 acres of land in Orange County, Florida, from one George E. Howard; that Flower Brothers Realty Co. was the exclusive agent of the owner to sell the land and that appellee was at the time of the purchase working as salesman for Flower Brothers Realty Co.; that the said Huttig represented to her that the owner was demanding a price of $250.00 per acre for the land and that it could not be sold except on a basis of that amount; that one Orin M. Burton, the fiancee of complainant, corroborated Huttig in the statement and advised the purchasing of the property by himself, the complainant and a syndicate which the complainant was to form; that when the deal was closed, the complainant paid or caused to be paid $11,500.00 in cash and that Burton was supposed to have paid $11,000.00 in cash; that complainant gave her three notes for $6,000.00 each, payable to the order of Howard, secured by a mortgage encumbering the property, and that later upon the representation of Huttig and Burton that Huttig had advanced to Burton the sum of $6,000.00 to close the transaction and at his request *Page 1099 
complainant signed another note payable to the order of Huttig in the sum of $6,000.00 and secured the same by a second mortgage upon the property; that complainant afterwards, upon several occasions, attempted to get an itemized statement from Huttig or Mr. Flower of all money paid in and of the disposition of the same, and finally, several months after the transaction was closed, she was advised by Mr. Flower and Huttig that the property had been purchased by them from George E. Howard, sold by them to Mrs. A. M. White (who was the mother of Burton) for $36,000.00, and that the said Mrs. White sold the property to complainant. The bill charged that there was no sale to Mrs. White or purchase by complainant from Mrs. White, and that the complainant did not know Mrs. White in the transaction; that the complainant became suspicious and afterwards took the matter up direct with Howard and ascertained from him that he had authorized the land to be sold at a price of $150.00 per acre net to him; that he only received $24,000.00 for the property — $6,000.00 in cash and the three notes and mortgage above mentioned. It is further alleged that Huttig and Burton "has the remainder of the money, or that they divided it between them, or falsely represented to your oratrix that said money had been paid in by Burton in order to carry out the plan of selling said property to your oratrix on a basis of $250.00 per acre, or forty thousand dollars for the total purchase price;" that prior to acquiring knowledge of the actual sales price of the property, complainant had paid $2,000.00 on the mortgage note given to Huttig and after acquiring such knowledge she had refused to pay further upon said note; that Huttig had filed suit in Orange County to foreclose said mortgage, and after complainant's attorneys had filed certain papers in the cause, Huttig dismissed the suit and filed another against her in Cook *Page 1100 
County, Illinois, the place of her residence, in order to vex, harass and annoy her. The complainant prayed for a cancellation of the note and mortgage to Huttig, for a return of the $2,000.00 paid, for an injunction and for general relief.
In the answer of Huttig to the bill of complaint, he admits that at the time of the transaction he was a salesman for Flower Brothers Realty Co., but alleges that he was buying and selling real estate on his own account. He denies representing to complainant that the land was owned by Howard or that Flower Brothers Realty Co. was the exclusive agent of Howard, or that Howard was demanding a price of $250.00 per acre. He admits that the deed was made directly from Howard to complainant, the payment of $11,000.00, the giving of the three notes for $6,000.00 each and the mortgage securing the same. He denies that he stated to complainant that he advanced $6,000.00 to Burton, but admits the making of the $6,000.00 note payable to his order and the mortgage securing same, alleging that it was necessary to make up the purchase price of the land and represented his profit. He admits the listing of the land by Howard with Flower Brothers Realty Co. at a price of $150.00 per acre and says that the reason for the transfer of the land direct from Howard to complainant was to facilitate and expedite the closing of the transaction; that it had been purchased by him, the defendant, and another prior to purchase by complainant and then sold to Mrs. A. M. White, but denies that he represented himself as the agent of Howard, or that he represented that the land belonged to Howard and that it could not be sold except on a basis of $250.00 per acre. He admits the receipt of the $2,000.00 paid by complainant on the note to him; that he filed suit in Orange County on his mortgage and that he dismissed it because Howard was about to institute suit to *Page 1101 
foreclose his mortgage and that he filed the suit alleged to have been filed in Cook County, Illinois, but denies that this latter action was taken to vex, harass, and annoy the complainant.
Upon final hearing upon bill, answer and testimony the court entered a decree granting the specific relief prayed for in the bill with the exception of the prayer for injunction, no mention being made as to that.
For a reversal of the decree, the appellant contends first that the representations alleged to have been made were not representations of material facts as they must have been in order to entitle the complainant to a cancellation, and second that complainant did not carry the burden of proof required by this Court in cases of this character.
Huttig, as the agent of Flowers Brothers Realty Co., was the subagent of Howard and if he made any material false representations in connection with the sale and they were relied upon by the complainant and induced her to purchase the property they were binding upon Howard. Huttig had no right "to speculate upon" Howard. In neither the pleadings nor the proof is it made to appear that Huttig was the agent of complainant or that a relationship of confidence existed between them or that any artifice was used by Huttig to prevent injury or investigation by the purchaser, the complainant.
In Merryman v. David, 31 Ill. 404, a case somewhat analogous to this case, it appears that the plaintiff bought real estate from the defendant who presented himself to be the agent of the owner, paying a price in excess of the amount defendant procured it for. The facts showed that the defendant was not the agent of the owner or vendor. The Court denied recovery and said:
 "The only thing in which appellee was misled, was as to appellant being Gregg's agent. Has he any *Page 1102 
interest in the relation that appellant occupied to Gregg? Appellant, having assumed to be Gregg's agent, if recognized as such, had no right to speculate upon his principal. He was bound to the utmost good faith to his principal, and had no right to realize a profit off of the fund with which he was acting. Having received more than he accounted for to his principal if he was an agent, he would be liable to his principal to refund the amount retained, beyond his compensation. But the rights, duties, and liabilities of an agent do not attach to other persons than the principal. And in this case it is not claimed that appellant was the agent of appellee. Nor can appellant be liable to him as an agent. If appellant has acted in bad faith with his principal, it does not concern appellee."
In McLennan v. Investment Exchange Co., 170 Mo. App. 389, 156 S.W. R. 730, the facts appear to be quite similar to the facts in this case, and it was held that the fraud, if any, was against the principal, since the brokers were acting for the vendor, and not for the purchaser, and the Court said:
 "Under the rule of caveat emptor, which recognizes the parties to a sale as business antagonists dealing at arm's length, the purchaser has a right to buy at as low price as his skill will secure, and the vendor has the corresponding right to sell at the best price he can obtain. Neither has the legal right to the other's best price, and therefore the representation of either that he has made his best offer cannot be said to be a representation of a material fact. To say otherwise would be to impose a restriction on the right of persons to make their own bargains. We agree *Page 1103 
with plaintiff that defendants in law and in fact were the agents of Elebracht in the transaction. The trick by which they pretended to purchase the property themselves was nugatory as to their principal. The law would not permit them to do such violence to the trust and confidence their principal had reposed in them. Therefore the representations they made to plaintiff were the representations of their principal, and as they did not relate to a material fact and did not damage plaintiff, he has no cause of action."
In Aronovitz v. Woolard, 166 App. Div. 365,152 N.Y. Supp. 11, the purchaser requested the agent to see the owner and ascertain the lowest price he would take for certain property. Later the agent advised the purchaser would not accept less than $12,500.00 The agent had an agreement with the owner whereby he was to receive for his services any sum he could obtain in excess of $12,000.00. The deal was closed and the agent received checks aggregating $12,500.00, one of which was for $500.00. The owner received only $12,000.00, the agent receiving the check for $500.00. Suit was instituted on this $500.00 check and it was successfully contested on the ground that the statement that the owner would not take less than $12,500.00 was false. On appeal the judgment was reversed, and it was said by the Court:
 "The plaintiff was not the defendant's agent and was under no obligation to sell the property to him except upon his own terms, and under the agreement between him and the owner had a right to obtain the best price he could. A misstatement of fact, so long as it actually did not affect the value of the property, is not actionable. For all that appears the property may *Page 1104 
be worth much more than the price agreed to be paid." See also Bradley v. Oviatt, 86 Conn. 63, 84
Atl. R. 321, 42 L.R.A. (N.S.) 828; Ripy v. Cronan, 131 Ky. 631, 115 So. W. R. 791, 21 L.R.A. (N.S.) 305; Chrysler v. Canaday, 90 N.Y. 272, 43 A. R. 166; Graffenstein v. Epstein, 23 Kan. 443, 33 A. R. 171
The rule laid down in the foregoing cases, we believe should be followed, although the highest courts of at least two states have held otherwise. See Estes v. Crosby, 171 Wis. 73, 175
N.W. R. 933, 8 A. L. R. 1377; Hokanson v. Oatman, 165 Mich. 512, 131 N.W. R. 111. The opinion of this Court in Pryor v. Oak Ridge Development Corp., 97 Fla. 1085, 119 So. R. 326, indicates in a measure the attitude of this Court on the question involved here.
Assuming that Huttig was the agent of Howard for making a sale that would net the owner $150.00 per acre, the complainant had no legal interest in how much Huttig was to receive for making the sale, for that was a question between Huttig and the owner. It is immaterial to the complainant whether Huttig or Howard, the owner, got the additional $100.00 per acre.
The alleged representations were not such as to justify an action for fraud and deceit, or the granting of the relief prayed for in the bill.
It follows that the decree must be reversed and it is so ordered with directions to dismiss the bill.