[No. 27399.   Department Two.   April 13, 1939.]

FRANK BUCKLEY et al., *Appellants*, v. JOHN HATUPIN, *Respondent*, A. L. DAY et al., *Defendants*.[1]

*James M. Ballard* and *Philip Tindall,* for appellants.

*Caldwell, Lycette & Diamond,* for respondent.

BEALS, J.—Prior to June 18, 1937, plaintiffs were the owners of an improved five-acre chicken ranch, stocked with chickens, which property they had owned and

[1]Reported in 89 P. (2d) 212.

operated for some time. Desiring to dispose of this property, plaintiffs advertised the same for sale or exchange, whereupon defendant John Hatupin, who has for many years been engaged in the city of Seattle as a real estate broker and trader, called upon plaintiffs and exhibited to them some properties which had been listed with him. Hatupin sought to interest plaintiffs in a bungalow court (owned by Frank O. Bermudas and wife), informing plaintiffs that the owner's price was fifteen thousand dollars; three thousand dollars cash; two thousand dollars in monthly installments of twenty-five dollars each; five thousand dollars by the assumption of a mortgage on the property; Hatupin stating that the remaining five thousand dollars could be paid by a conveyance of city property. Hatupin informed plaintiffs that the owner of the bungalow court did not want farm property, and for that reason would not consider plaintiffs' chicken ranch as part payment, but that defendants A. L. and Lavon Day owned a parcel of city property, which the owner of the bungalow court would accept at the valuation of five thousand dollars, and that, if plaintiffs would convey their five-acre tract to defendants Day, the latter would convey their city property to the owner of the bungalow court, who in turn would convey the bungalow court property to plaintiffs. Later, Hatupin told plaintiffs that he had authority to accept $14,500, if plaintiffs would pay $4,500 in cash. Plaintiffs accepted the proposition, and the deal was consummated in accordance with the plan above outlined.

Later, plaintiffs sued John Hatupin and the Days, alleging that Hatupin's representations to them concerning the price demanded by Bermudas for his property were false, and that the price Bermudas asked was in fact much less than Hatupin had represented, and that defendants Day had not conveyed any property

whatever to Bermudas, but had conveyed the five-acre ranch to Hatupin, who had kept that property, Bermudas receiving only the cash payment made by plaintiffs and the assumption by plaintiffs of the mortgage upon the bungalow court. Plaintiffs contended that Hatupin had, by false representations, procured and appropriated to his own advantage their five-acre tract, of the value of five thousand dollars.

The issues were regularly made up, the defendants denying any wrongdoing on their part, and the action was tried to the court, sitting without a jury, resulting in a judgment in defendants' favor, dismissing the action. Plaintiffs have appealed from the judgment dismissing their action against Hatupin, but they have not appealed from the judgment of dismissal in favor of defendants Day.

The only error assigned is that the trial court erred in not granting appellants judgment against respondent John Hatupin, and in dismissing the action as against him.

Appellants never met Mr. Bermudas until after the transaction had been closed, when they called on him and learned that he had not demanded or received anything for his property save $3,484.52 of the $4,500 cash payment, and, of course, the assumption of the five thousand dollar mortgage by appellants. During the negotiations with respondent, appellants had asked the name of the owner of the bungalow court, and stated that they would like to meet him, respondent then telling appellants that the owner was an odd character and that it would be better if appellants did not meet him, as, if they did, something might happen which would prevent the consummation of the deal. Appellants do not contend that they persisted in demanding that respondent tell them the name of the owner of the property, and they took no other steps to

ascertain his name, not even inquiring of the tenants occupying the property.

Respondent's statement to appellants that Mr. Bermudas demanded fifteen thousand dollars for his property was false. Mr. Bermudas purchased the property in 1926 for twenty thousand dollars, and expended $2,100 in improvements. There was some testimony to the effect that Mr. Bermudas at one time had asked seventeen thousand dollars, or more, for the property; but at the time respondent was dealing with appellants, he was asking only $8,500 net, five thousand dollars of this amount to be paid by the assumption of the mortgage by the purchaser. Mr. Bermudas testified as a witness on behalf of appellants, stating that what he received was all that he had asked for the property, that he expected nothing further, and that he (Bermudas) "was to get the $3,500 net, and he [respondent] was to get his commission out of whatever he got." Mr. Bermudas did not know until after the deal was closed that any property in addition to the cash had been transferred by appellants to anyone.

The foregoing statements are amply supported by the record. In summing up the evidence, the trial judge not only stated that he found that appellants "told the truth all the way through," but again said, referring to appellants, "as to any controverted question of fact, I think your people told the absolute truth." The trial court was of the opinion that appellants had received what they bargained for, and that they were entitled to no relief against respondent.

Appellants had every possible opportunity to examine the bungalow court, and they did employ a thoroughly competent real estate appraiser to examine the property and give them his opinion as to its value. Appellants more than once examined the property, sometimes in the absence of respondent, all the apart-

ments being then occupied, and on one occasion, Mr. Buckley, in the presence of Mrs. Buckley, talked to some of the tenants, one of them, a Mr. Magee, then stating that he thought the bungalow court was for sale for ten thousand dollars. The Buckleys then called on respondent and asked him about this alleged price, respondent, according to the Buckleys, stating that anyone who said that the property could be bought for ten thousand dollars did not know what he was talking about.

During the time appellants were negotiating with respondent for the Bermudas property, they were also talking with other real estate agents and examining other properties offered to them on various terms in exchange for the chicken ranch. Appellants have had considerable experience in the business world and knew something about the purchase and sale of real estate, their testimony indicating that they are not persons easily imposed upon.

Appellant Frank Buckley testified that he told respondent that the appraiser who had examined the property for appellants had appraised the same at twelve thousand dollars, and that respondent had then remarked: "Well, they always appraise things plenty low, and you can't depend upon that."

The trial court, in its oral opinion, observed that there was nothing in the evidence to show that the property which appellants received was not worth the price they agreed to pay therefor. The court was of the opinion that respondent had not truly represented the situation to appellants, but that respondent was the agent of Bermudas, was never appellants' agent, and was dealing with appellants at arm's length. The trial court also was of the view that any false statements made by respondent were not relied on by ap-

pellants, and were not the inducing cause of the contract.

Appellants having examined the bungalow court property, respondent called at their place of business, and after some conversation and negotiation, an agreement, typed by Mrs. Buckley, making some changes in a proposed agreement previously prepared by respondent, was signed by respondent as "J. Hatupin Inv. Co.," and by appellants. By the terms of this agreement, appellants agreed to purchase the bungalow court property. There is in evidence a duplicate of this agreement, bearing an acceptance by the owner, signed by respondent. The evidence as to appellants' knowledge of this signature by respondent, as owner, is in dispute, appellants testifying that this copy was retained by respondent.

The following day, the parties met at the office of a title insurance company, where an escrow agreement was prepared and signed, Mr. Buckley making several suggestions as to the terms thereof. At respondent's suggestion, there was included in the escrow agreement a statement by appellants to the effect that they had inspected, to their satisfaction, and had appraised, the real estate which they were to receive.

When the case was called for trial, appellants waived a second cause of action for damages to the personal property on the five-acre tract, and during the course of the trial, made clear their position that they did not seek rescission or damages in connection with their first cause of action, which is above referred to, but relied solely on the fact that by the false representations of respondent, they had been induced to convey their ranch property to Mr. and Mrs. Day, which property the Days had conveyed to respondent, and which respondent had appropriated to himself, Mr. Bermudas knowing nothing of this phase of the transaction, and

receiving no benefit therefrom. The trial court, in its memorandum opinion, noted that appellants stated that they did not contend that the property which they had received was not worth the amount which they paid therefor, including the conveyance of the five-acre tract, the opinion stating that the trial court was of the view that the preponderance of the evidence indicated that the property was worth that amount.

It appears that Mr. Bermudas had given defendants Day an earnest money receipt, agreeing to convey the bungalow court property to the Days. The deal was consummated by placing in escrow a deed from Mr. and Mrs. Day to appellants, who then conveyed their five-acre tract to the Days, and paid to the escrow holder $4,500 in cash, which was distributed in accordance with the escrow agreement. Defendants Day then turned over to respondent the amount of cash which they received after Mr. Bermudas had received his share of the money and after the payment of certain other items, in accordance with the terms of the escrow agreement, Mr. and Mrs. Day then conveying the ranch property to respondent.

The city property which respondent had told appellants the Days would convey to Mr. Bermudas was apparently non-existent. In any event, no such property was conveyed to Mr. Bermudas, he receiving nothing but his share of the cash payment and the benefit of the assumption by appellants of the five thousand dollar mortgage on the bungalow court property.

Mr. Bermudas testified that he received everything he asked for the property, and that the deal was closed when he received his check. He also testified concerning a conversation with Mr. Buckley, sometime after the deal had been closed, that Mr. Buckley "said

that I was gyped, and I told him I didn't think so, that I got what I asked, and that I was satisfied."

Under the evidence, the question to be determined is whether or not the relationship of appellants and respondent was such that appellants were, for any reason, justified in relying upon statements made by respondent and did rely thereon, and whether respondent was appellants' agent and, as such, misled them, to their prejudice.

Respondent testified that he dealt with appellants upon the basis that he owned, or at least controlled, the bungalow court property. It is admitted that appellants did not seek respondent; he called on them after noticing their advertisement of their ranch.

It is, of course, the rule that a principal who has been deceived, to his prejudice, by his agent, may recover from his agent property obtained from him by the agent through false and fraudulent representations. Appellants cite several decisions of this court based upon this rule. We are, however, unable to find in the record any basis for holding that respondent was at any time appellants' agent, and, for this reason, the authorities above referred to are not here in point.

Appellants rely upon some other decisions of this court, which we shall now consider.

In the case of *Jameson v. Kempton*, 52 Wash. 106, 100 Pac. 186, it appeared that the plaintiff and defendant were friends of several years standing, and that the plaintiff, a woman, relied implicitly upon statements made to her by defendant. The plaintiff sued to recover the difference between the actual amount which the defendant paid for a tract of real estate and the amount which she paid to defendant therefor. The defendant had voluntarily assumed to act for the plaintiff, and the defendant took a deed from the owner of the property to himself, later conveying to the

plaintiff, and misrepresenting to her the amount which he had paid. The action was tried to a jury, which returned a verdict in plaintiff's favor, and a judgment entered upon this verdict was, on appeal, affirmed by this court. The parties were not dealing at arm's length, and this court held that the plaintiff was entitled to rely upon the statements made by defendant, which the jury found were false. The case does not support appellants' contention, and is easily distinguished on the facts from the case at bar.

Appellants cite the case of *Carnahan v. Moore*, 70 Wash. 623, 127 Pac. 195, in which it appeared that the defendant induced the plaintiff to join with him in purchasing a tract of land and misrepresented to the plaintiff the price which the defendant paid. A judgment in favor of the plaintiff, in an amount equal to the excess he had paid over that which he would have paid had the defendant correctly informed him as to the purchase price, was affirmed. The facts of the case presented a combination of agency and joint venture, a very different situation than that here presented. In the course of the opinion, this court said:

"Where one party induces another to purchase land by misrepresenting the purchase price and agreeing that he will himself purchase an undivided half of the land at the price stated, the party making such false statements and representations will be compelled to account to his copurchaser on the basis of the entire benefit he may have received in buying the land, as he will not be permitted to charge his copurchaser a price in excess of that which he himself has paid."

The case of *Forsyth v. Dow*, 81 Wash. 137, 142 Pac. 490, is quite similar to the case last cited. Plaintiff and defendants were to purchase motors at a list price, plaintiff to pay for his share of the motors the amount paid therefor by defendants. The defendants bought the motors at a cheaper rate, and this court held that

the verdict of a jury rendered in plaintiff's favor for the amount he had paid in excess of the list price was supported by competent evidence, and that the judgment entered by the trial court in defendants' favor notwithstanding the verdict of the jury should be reversed. The action was one for deceit, and apparently the plaintiff was unjustly dealt with by one who was his associate in the purchase.

In the case of *Pinkham Lumber Co. v. Woodland State Bank,* 156 Wash. 117, 286 Pac. 95, it appeared that the defendant, who was the owner of real estate, sold the land to the plaintiff, knowing that its own agent and plaintiff's agent had misrepresented the purchase price to the plaintiff, the defendant so arranging the terms of sale at the increased purchase price as to enable it to deliver to its own agent and to plaintiff's agent the increased amount paid by plaintiff. The case was decided against the plaintiff upon the ground that plaintiff had released a joint *tort feasor,* so the question of the defendant's liability to the plaintiff was never actually decided.

A person may be a gratuitous agent, and while one so acting is not held to the exercise of such a high degree of care and diligence as an agent for hire, nevertheless a volunteer agent may not indulge in misrepresentations to his own profit and his principal's prejudice. *Stewart v. Preston,* 77 Wash. 559, 137 Pac. 993; *Carlson v. Stotko,* 178 Wash. 331, 34 P. (2d) 886; 1 Cal. Jur. 790-1, § 79. Many authorities from other jurisdictions to the same effect are cited by appellants. In I Mechem on Agency (2d ed.), 894, § 1223, the rule is stated as follows:

"The fact that the agent acted gratuitously makes no difference in the application of these rules. Neither does the fact that he was a volunteer whose services had been accepted. In either case if he undertakes to

act as agent, he must act with loyalty to the principal's interest. He must, however, actually be agent; otherwise no confidential relation will arise."

Mr. Buckley testified that respondent told him that he was making only one hundred dollars out of the deal. In answer to a question by the court as to whether or not he (Buckley) expected to pay respondent any commission, the witness answered: "Not in actual money. There was conditions given there, but nothing in money." In response to a further question by the court as to what respondent meant by conditions, the witness answered: "Well, I meant—I just meant that up to that time I was very friendly with Hatupin, and such things."

It is clear that appellants did not expect to pay respondent any commission, and, as above stated, we can find in the record no basis for holding that respondent ever became appellants' agent, either with or without compensation.

█ Appellants argue that they are entitled to recover, even though no agency or other confidential relationship existed between them and respondent. In this connection, they cite the case of *Greig v. Interstate Inv. Co.*, 121 Ore. 15, 253 Pac. 877. In that case, it appeared that the plaintiff, a seafaring man, who knew little about the values of real estate, owned a lot, which he exchanged for a tract owned by one Taylor, Greig assuming a mortgage and giving a second mortgage to secure an installment note in the sum of one thousand dollars. Taylor was represented by the defendant, whose sales manager informed Greig that three thousand dollars in value was the least amount that Taylor would accept, and engineered a deal whereby Greig conveyed his land to the defendant. The statements made by defendant's agent were false, and defendant, by reason thereof, procured a deed to

Greig's land. The court noted that defendant's sales manager was acting for Greig as well as for Taylor, knowing that Greig was ignorant of land values and relied upon the agent's statements as to the value of Taylor's tract. The action was tried to a jury, which returned a verdict in Greig's favor. On appeal, the judgment was affirmed, the court noting that there was evidence to the effect that defendant's manager represented Greig in the exchange. The verdict of the jury was evidently supported by competent evidence, and the opinion of the supreme court of Oregon affirming the judgment is not in point here.

Respondent was not appellants' agent. Respondent and appellants were strangers, and were dealing at arm's length. Neither does it appear that respondent quoted any price for the bungalow court property as being the lowest or the best that could be obtained. Appellants were afforded every opportunity to examine the property and make whatever inquiry concerning the same which they wished to make. They had the property appraised by a disinterested appraiser, talked to the tenants occupying the property, and failed to follow up the suggestion made by one of the tenants that the property could be bought for ten thousand dollars. Appellants were experienced in business affairs and knew something of the purchase and sale of real estate. They do not even contend that they paid for the property more than its value, their contention being simply that they did not obtain as good a bargain as they might have had, had they known the price Mr. Bermudas was willing to accept. In their complaint, appellants did not allege that respondent was their agent.

While the record shows respondent in a very unpleasant and unfavorable light, it does not show that

he was ever appellants' agent, or that any fiduciary relation existed between him and appellants.

Appellants procured, as the result of the deal, exactly the property they expected to obtain, in exactly the condition in which they saw it, and they paid for it precisely the value which they expected to pay.

In Restatement of the Law of Agency, § 348, under the title "Third Person vs. Agent," comment d, p. 763, it is stated that

"An agent, acting for the benefit of the principal, is privileged to make such misrepresentations in bargaining as are permitted to the principal as a bargainer."

Following this comment are stated two illustrations:

"P tells A to state to T that P will sell Blackacre for not less than $10,000 but if A deems it wise, he may accept an offer of $9,000. A represents that P will not take less than $10,000 and T buys the land from him for $10,000. A is not liable to T in deceit."

"A is instructed to tell T that P will sell Blackacre for $9,000. A represents to T that the price of the land is $10,000 and that he will take no less, intending to pay the entire amount to P. T pays A $10,000. Later A decides to keep the $1,000 and reports to P that the land was sold for $9,000. A is subject to liability to P for $1,000, but is not subject to liability to T."

The second illustration quoted is very much in point here.

The cases of *Stewart v. Larkin*, 74 Wash. 681, 134 Pac. 186, L. R. A. 1916B, 1069; *Kalmans v. Powles*, 121 Wash. 203, 209 Pac. 5, 29 A. L. R. 618; and *Russell v. Stephens*, 191 Wash. 314, 71 P. (2d) 30, bear upon some phase of this case, and support respondent's position.

The case of *McLennan v. Investment Exchange Co.*, 170 Mo. App. 389, 156 S. W. 730, is in point. The plaintiff sued the broker, who had negotiated a deal where-

by plaintiff purchased a farm, to recover the difference between the commission the broker represented to the plaintiff he was to receive and the amount of the commission actually paid. Recovery was denied, the court calling attention to the fact that plaintiff had dealt in real estate in the vicinity of the tract he purchased, was familiar with the values of land, and inspected the farm before purchasing it. It appeared that the plaintiff relied on his own judgment as to the value of the farm and made no claim that the same was not worth the price he paid. The court expressed the thought that defendant's principal, not plaintiff, was the injured party.

The following cases should also be read in this connection: *Bradley v. Oviatt*, 86 Conn. 63, 84 Atl. 321, 42 L. R. A. (N. S.) 828; *Bosley v. Monahan*, 137 Iowa 650, 112 N. W. 1102; *Linnemann v. Summers*, 123 Atl. (N. J. Ch.) 539; *Huttig v. Nessy*, 100 Fla. 1097, 130 So. 605; *Harris & Co. v. Weller*, 280 Fed. 980; *Sanders v. Stevens*, 23 Ariz. 370, 203 Pac. 1083.

After careful consideration, we are of the opinion that, however unethical respondent's conduct may have been, appellants have no legal ground for recovery of judgment against him.

The judgment of the trial court dismissing the action is affirmed.

BLAKE, C. J., MILLARD, GERAGHTY, and SIMPSON, JJ., concur.