Stanley WILLMSCHEN and Letisha Willmschen, Appellants (Plaintiffs),

v.

Wes MEEKER, doing business as Meeker Agency, Appellee (Defendant).

Wes MEEKER, doing business as Meeker Agency, Appellant (Defendant),

v.

Stanley WILLMSCHEN and Letisha Willmschen, Appellees (Plaintiffs).

Nos. 87–83, 87–84.

Supreme Court of Wyoming.

Feb. 18, 1988.

Don W. Riske, Cheyenne, for Stanley Willmschen and LeTisha Willmschen.

Kenneth M. Koski, Powell, for Wes Meeker.

Before THOMAS, CARDINE, URBIGKIT and MACY, JJ., and HANSCUM, District Judge.

URBIGKIT, Justice.

Cross appeals are presented, derived from consecutive installment-contract land sales, with buyer suing the real estate broker for land title and encumbrance misrepresentation as a fraud action, and the broker counterclaiming for a resale commission on a part of the purchased property.

Both litigants were unsuccessful in trial court, and we affirm, to their equal sufferance in denial.

We address the Willmschens' appeal by affirming the trial court on disposition under stated Issue IV of their brief:

"WHETHER THE APPELLANTS WERE DAMAGED AS A RESULT OF THE FRAUDULENT MISREPRESENTATIONS OF THE APPELLEE,"

and as restated by appellee broker Meeker in his brief as Issue I:

"WHETHER PLAINTIFFS FAILED TO PROVE A PRIMA FACIE CASE OF DAMAGES AS A RESULT OF AN ALLEGED FRAUDULENT MISREPRESENTATION? (i.e. Whether the Appellants were damaged as a result of an 'alleged' fraudulent misrepresentation of

the Appellee—*ISSUE IV* of Appellants' brief)." [1]

## FACTS

This case involves consecutive sales of portions of a 320–acre parcel of land in Big Horn County, Wyoming. The first transaction occurred on May 1, 1981, when Larry W. Ellis and Janis M. Ellis sold the entire tract to Darrel R. Wagner and Teresa P. Wagner by a contract for deed. This contract required the escrow of a warranty deed from sellers to buyers; the escrow of a quitclaim deed from the buyers to the sellers; retention of the deeds by the escrow agent; and the sellers to consent to any whole or partial sale of the property by the buyers. A notice document of the existence of the sale was filed with the county clerk as the real estate transaction office of record. On October 7, 1981, the Wag-

1. By virtue of this disposition of the case, we decline to address the complex of broadly stated arguments defined by the parties as follows:

Willmschens, the buyers, urge the issues as:
"ISSUE I
WHETHER THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS' [Real Estate Broker Meeker] MOTION FOR A DIRECTED VERDICT (MOTION TO DISMISS).
"A. WHETHER THE TRIAL COURT APPLIED THE PROPER STANDARD OF REVIEW IN GRANTING THE APPELLEE'S MOTION FOR A DIRECTED VERDICT (MOTION TO DISMISS) AT THE CLOSE OF THE APPELLANTS' CASE.
"B. WHETHER THE TRIAL COURT APPLIED THE PROPER RULES OF BURDEN OF PROOF IN GRANTING APPELLEE'S MOTION TO DISMISS.
"ISSUE II
WHETHER THE APPELLANTS HAD ESTABLISHED A PRIMA FACIE CASE OF FRAUDULENT MISREPRESENTATION BY THE APPELLEE.
"ISSUE III
WHETHER THE COURT ERRED IN FINDING THAT THE APPELLANTS WERE CONTRIBUTORILY NEGLIGENT.
* * * * * *
"ISSUE V
WHETHER THE APPELLANTS WOULD HAVE RECEIVED MARKETABLE TITLE TO THE SUBJECT PROPERTY IF THEY HAD COMPLETELY PERFORMED THEIR PAYMENT OBLIGATIONS UNDER THE WAGNER TO WILLMSCHEN CONTRACT."
Meeker, the broker, advances these issues:
"2. ISSUE NO. 2: WHETHER THE TRIAL COURT COMMITTED ERR [sic] IN GRANTING DEFENDANT'S MOTION TO DISMISS?

"A. WHETHER THE TRIAL COURT APPLIED THE PROPER STANDARD OF REVIEW IN GRANTING DEFENDANT'S MOTION TO DISMISS AT THE CLOSE OF PLAINTIFFS' CASE? (ISSUE NO. I.A. of Appellants' Brief).
"B. WHETHER THE TRIAL COURT APPLIED THE PROPER RULES OF BURDEN OF PROOF IN GRANTING DEFENDANT'S MOTION TO DISMISS? (ISSUE NO. I.B. of Appellants' Brief).
"3. ISSUE NO. 3: WHETHER PLAINTIFFS FAILED TO ESTABLISH A PRIMA FACIE CASE OF FRAUDULENT MISREPRESENTATION BY THE DEFENDANT? (ISSUE NO. II of Appellants' Brief).
"4. ISSUE NO. 4: WHETHER THE TRIAL COURT FOUND PLAINTIFFS CONTRIBUTORILY NEGLIGENT? (ISSUE NO. III of Appellants' Brief).
"5. ISSUE NO. 5: AT WHAT POINT IN TIME IS MARKETABLE RECORD TITLE UNDER A CONTRACT FOR DEED (INSTALLMENT LAND CONTRACT) REQUIRED? (i.e. Appellants would have received marketable record title to the subject property if they had completely performed their payment obligations under the Wagner–Willmschen contract) (ISSUE NO. V of Appellants' Brief).
"6. ISSUE NO. 6: WHETHER PLAINTIFFS WAIVED THEIR CLAIM FOR FRAUDULENT MISREPRESENTATION BY THEIR SUBSEQUENT ACTIONS IN SELLING PART OF FARM UNIT 'D' TO DENNIS AND VAL JEAN BEECH; IN ENTERING INTO A STANDARD PURCHASE, OFFER AND RECEIPT WITH ROBERT E. AND CAROL A. CLAAR; AND IN SUBSEQUENTLY DEFAULTING UNDER THEIR CONTRACT FOR DEED WITH THE WAGNERS?"

ners assigned their acquisition interest (equitable estate) in the property to the Wyoming Production Credit Association of Casper (PCA), as a separate transaction loan security, by execution of an escrowed security transaction quitclaim deed and a recorded (April 9, 1982) Notice of Assignment of Agreement.

On January 11, 1983, the Wagners listed the property for sale with Wes Meeker, d/b/a Meeker Agency. The listing agreement drafted by the agency real estate agent, Mr. Gifford, listed the only encumbrance as a "Mortgage to Larry Ellis." A Meeker Agency representative subsequently went to the PCA office and was advised that the PCA would be willing to do anything it could to help accomplish resale of the property as would include security assignment release upon proportional payments to PCA for application on its loan to Wagners.

At this point in the title, the appellants, LeTisha and Stanley Willmschen, enter the picture by contacting the Meeker Agency about a land purchase, and were directed to an 80–acre parcel to be divided from the original 320 acres, and for which a purchase agreement was struck. An attorney was asked by Meeker to prepare a contract for deed, deeds, and escrow instructions for the transaction suitable for sale closing. A title insurance commitment was ordered for this transaction, and appellants, in mid-March of 1983, took possession of the 80 acres, subsequently closing on April 4, 1983 and thus ending the first chapter of this saga when, by installment contract underlying the original sales installment contract, they had purchased 80 of the total 320 acres originally sold to Wagners. In essence, Wagners had undersold their purchase equity subject to agreed right of partial release of assignment debt encumbrance.

The following spring, appellants decided to resell the property, again splitting to create a 60–acre parcel and a 20–acre parcel. The 60–acre parcel was purchased by Dennis and Val Jean Beech through Meeker, who arranged for the sale documents to be prepared. This was done by the same attorney, who, aware of the PCA assignment, protectively provided not only that the contract for deed contain specific references to the prior agreements for deed, but also that a deed from Ellises to Wagners, and deed from Wagners to the appellants, as well as deed from appellants to Beeches should be placed in escrow.

Having completed the 60–acre sale to Beeches, the Willmschens, on May 16, 1984, entered into a Deposit, Receipt, Offer and Acceptance typed agreement to sell the remaining 20–acre tract to Robert E. Claar, Carol A. Claar, and Robert E. Claar, Jr. Closing of the Claar sale for the 20 acres was to take place at a local bank. For reasons undisclosed in the record, the bank requested that the Willmschens leave the premises before the transaction could be closed, although the Claars as well as the Willmschens were present for that purpose. Nothing further was ever attempted or done thereafter to complete the transaction. Before the end of the month, the Willmschens vacated the 20–acre parcel, left the area, and discontinued payments to Wagners on the purchase obligation.

On December 16, 1985, the Willmschens filed suit against Wes Meeker, alleging three causes of action: (1) intentional misrepresentation (fraud); (2) punitive damages as a result of willful misrepresentation (fraud); and (3) violation of § 33–28–111(a)(i), W.S.1977.[2] Appellee Wes Meeker filed a counterclaim for a $1,800 commission still due and owing on the Beech sale. The case was tried to the court starting October 15, 1986, and at the close of the case Meeker moved for a di-

---

**2.** Section 33–28–111(a)(i), W.S.1977 pertains to the Wyoming Real Estate Commission's authority to censure a real estate licensee, or to suspend or revoke such license:

"(a) The commission shall upon a written sworn complaint or may upon its own motion investigate the actions of any broker, associ-

ate broker or salesman and may censure the licensee, suspend or revoke any license issued under this act [§§ 33–28–101 through 33–28–206] for any of the following:

"(i) Making any substantial misrepresentation, false promises or false or fraudulent representation; * * *."

rected verdict[3] which was favored by dismissal of the complaint from which this appeal arrived. The trial was adjourned without defendant presenting his case on the counterclaim. That adverse court decision was followed by Willmschens' motion for reconsideration, and objections to the defendant's proposed order of dismissal. The saga ended January 27, 1987 when the trial court signed the Meeker order dismissing the Willmschens' complaint but also dismissed the counterclaim to conclude the case by denied recovery to both parties.

## PROOF OF DAMAGES

■ Although the facts in this case are complex, the law is not. Neither the Willmschens nor Meeker[4] proved their damages regardless of any fraud involved.[5] Generally, fraud without damage cannot serve as a foundation for an action of deceit. *Gulke v. Brock*, 222 Cal.App.2d 459, 35 Cal.Rptr. 200 (1963); 37 C.J.S. Fraud § 40 at 288. To hold a broker liable for fraud one must prove: (1) falsity of the representation; (2) guilty knowledge or scienter; (3) intent to deceive or cause someone to believe the falsehood; (4) reliance on the misrepresentation which induced the purchaser to act; (5) actual deception; and (6) injury or damage to the person dealing with the broker. *Sanders v. Stevens*, 23 Ariz. 370, 203 P. 1083 (1922); 12 C.J.S. Brokers § 107 at 308–309. The burden of proving the damages, beyond nominal ones, is upon the party seeking the recovery. *Adel v. Parkhurst*, Wyo., 681 P.2d 886, 892 (1984); *State ex rel. Scholl v. Anselmi*, Wyo., 640 P.2d 746, cert. denied 459 U.S. 805, 103 S.Ct. 28, 74 L.Ed.2d 43

(1982); *Downing v. Stiles*, Wyo., 635 P.2d 808, 817 (1981); *Western National Bank of Lovell v. Moncur*, Wyo., 624 P.2d 765, 773 (1981); *Quinlan v. Jones*, 27 Wyo. 410, 198 P. 352 (1921). Damages cannot be presumed. *State ex rel. Scholl v. Anselmi*, supra, 640 P.2d at 750. See *United States v. Winters*, 224 F.Supp. 8 (D.Wyo. 1963), for a case where adequate proof of damages of alleged governmental fraud was not shown.

In Parkhurst, this court was faced with a situation similar to the case at bar where punitive damages were sought on several claims, one of which was misrepresentation. This court there identified factors justifying an award of punitive damages, and concluded that no evidence was presented on the financial condition or the wealth of the defendant so the award of punitive damages was inappropriate.

■ In this case, this court need not even go that far because there simply is no proof in the record of any damages sustained by the Willmschens. Willmschens argue the Claars would not close because of the PCA security encumbrance. However, the record is devoid of any evidence why the deal between the Willmschens and the Claars did not close, and certainly there is no evidence that Claars were unwilling to close the transaction negotiated by Willmschens. There is no question but that the PCA would release the assignment upon pro-rata payment so that proper title was available upon proper payment. The record only reflects that the closing was scheduled and that it did not occur because the Willmschens were asked to leave the bank where the closing was to take place.[6]

3. More properly, this should have been a motion to dismiss, since without a jury there would be no verdict.

4. Where damages are sought by the defendant by counterclaim, the burden rests with him to prove his damages. 25A C.J.S. Damages § 144 at 15. Even if the plaintiff may have mostly proved defendant Meeker's counterclaim case, trial process 'presentation' did not demonstrate attribution for that purpose.

5. The Willmschens had notice by the title binder at the time they originally purchased the property, and they even stipulated during trial that

there was no misrepresentation of the property conditions. The more complex issue of underselling from an installment contract simply does not merit our attention on this record where damage remained unproven in the very curious factual context of why the second resale did not close.

6. That bank had no apparent connection with the financing of this transaction except as escrow agent for installment-contract documents. Apparently it was just a convenient place for the parties to meet to conduct their business. Less than the full story is proved. All we discern from the record is:

Without more in the record, this court cannot find trial-court error to determine that the reason the closing did not occur arose from any title flaws or occasioned damage. It is a fundamental principle that underlies the damage assessment that a person injured shall only receive compensation commensurate with his loss, and no more. *Rocky Mountain Packing Co. v. Branney,* Wyo., 393 P.2d 131, 135 (1964); *Hunt v. Thompson,* 19 Wyo. 523, 120 P. 181, 184 (1912). Although dismissal of plaintiffs' complaint, in effect, occurred pursuant to Rule 41(b), W.R.C.P., which does require consideration of the evidence in the light most favorable to them including all reasonable inferences which may be deduced therefrom, this record fails to provide a factual basis as proof of damages which will justify reversal. *Osborn v. Manning,* Wyo., 685 P.2d 1121 (1984); *Amfac Mechanical Supply Co. v. Federer,* Wyo., 645 P.2d 73 (1982); *Fuller v. Fuller,* Wyo., 606 P.2d 306 (1980); *Angus Hunt Ranch, Inc. v. REB, Inc.,* Wyo., 577 P.2d 645 (1978).

## SALES COMMISSION COUNTERCLAIM

 In cross appeal, Meeker claims trial-court error in denial of an opportunity to present his case in chief on the counterclaim for the commission. The record reflects no court denial of the Meeker case on the counterclaim, but rather that Meeker failed to do anything, evidenced by the following dialogue after the trial court granted the Meeker motion for a directed verdict (motion to dismiss) on plaintiff's claims:

"MR. RISKE: If that's what the Court wants to put on the record, that's fine.

"THE COURT: It's more persuasive that way to me.

"MR. RISKE: Okay. I guess we go home.

"THE COURT: Okay.

"MR. KOSKI: I will draft the Order and send it to you for approval as to form.

"THE COURT: Pardon?

"MR. KOSKI: I will draft an appropriate Order and send it to Don for his approval as to form. Okay?

"THE COURT: All right.

"MR. KOSKI: Thank you, Judge.

"THE COURT: All right.

"(At 10:08 A.M., the matter was completed.)"

"Q. Was Mr. Copenhaver [your closing attorney] at the bank [First National Bank of Lovell] when you were doing the closing?
"A. No.
"Q. Why was that?
"A. That I don't know. He called up—
"Q. Excuse me. Who had possession of the documents at the time of the closing?
"A. He gave me a copy of some documents to take down there to the bank. He was supposed to come down, seems like I did have—I don't know if I had his copy. I did have a copy of the contracts for deed. I don't know if it was or not—I know he didn't show up.
"Q. The attorney handling the closing didn't show up?
"A. That's correct.
"Q. Did you have legal documents?
"A. That I can't answer. I don't think so though.
"Q. How were you going to close if you didn't have the documents that you had to sign?
"A. Because the attorney was going to be there with the documents. I presume the attorney told me to be at the bank. I was at the bank.
"Q. The reason for not closing was because the attorney was not there?

"A. I believe I called the attorney and told him. We were asked to leave before he got there.
"Q. The reason for not closing was because the bank asked you to leave?
"A. I think basically we could say that, yes.
"Q. It wasn't because the P.C.A. would not agree to this transaction; isn't that correct? Isn't it a fact the P.C.A. agreed to this transaction?
"A. I believe they did, yes.
"Q. They consented to you selling the property to the Claars?
"A. Yes. I believe they did.
"Q. Do you recall, Mr. Willmschen, what time the closing was to take place?
"A. I think I told you before it was 2:30, I believe, in the afternoon.
"Q. What time did the bank ask you to leave?
"A. It was shortly after I got there, probably within ten minutes of me arriving at the bank.
"Q. Do you recall—so it's your statement to the Court that the problem on closing was because the attorney did not show up?
"MR. RISKE: Objection, Your Honor. That wasn't his statement at all.
"THE COURT: Sustained.
"A. I didn't say that."

Apparently everyone "went home," the order of dismissal was prepared and approved as to form by Meeker's attorney but not Willmschens, and the court executed and filed the order. As this dialogue shows, Meeker's attorney drafted the order of dismissal which included his client's counterclaim dismissal. This record cannot sustain Meeker's appeal involving an issue now first presented on appeal. *Matter of Estate of Obra*, Wyo., 749 P.2d 272 (1988); *Davenport v. Epperly*, Wyo., 744 P.2d 1110 (1987); *Ricci v. New Hampshire Ins. Co.*, Wyo., 721 P.2d 1081 (1986); *ABC Builders, Inc. v. Phillips*, Wyo., 632 P.2d 925 (1981). Even if we were to go further than this sound appellate principle, we would have to hold that this was invited error which may not now be asserted as a ground for reversal since the error was induced or invited by the losing party. *Appeal of Williams*, Wyo., 626 P.2d 564, 571, cert. denied sub nom. *Williams v. Public Service Commission of Wyoming*, 454 U.S. 896, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981); *Weber v. Johnston Fuel Liners, Inc.*, Wyo., 519 P.2d 972, 978 (1974). A litigant cannot walk out of the courthouse, prepare and submit the judgment, and then on appeal complain about trial-court error in denial of his counterclaim for which no evidence was introduced or trial-court objection taken. This is a "went home and case concluded" result. Denial of a litigant's day in court is not presented on this record where the litigant failed to object to trial conclusion or seasonably request an opportunity to present his counterclaimant evidence.

Affirmed.